Opinion of the court delivered by
Judge Catron.
Mary Dickson filed her petition in the county court of Dickson, for dower of the real estate of John Dickson, to *111 whom she had been married. This was opposed by his heirs at law, the children of a former wife: — dower was decreed her, and an appeal taken to the circuit court by the defendants, when the facts in the cause were agreed, and the cause adjourned to this court for judgment upon . the facts set forth. — In 1812, Mary Dickson, the petitioner, was married to Benjamin May, in Union county, Kentucky, with all the ordinary solemnities. In 1813, she and said May became separated in the same county where they had married. In 1818, Benj. May filed his bill in chancery, in the Union circuit court, in the State of Kentucky, his place of residence, praying to be divorced from said Mary; alleging that she had abandoned him voluntarily, and without any just cause, in the year 1813, and never could be prevailed upon to return to him. To this bill she appeared and answered, that she had abandoned the complainant, May, as alleged in the bill, and never would again live with him: that in so doing, she had consulted her own happiness, which she supposed it her duty to do. The cause was regularly set down for hearing, and the third term after the bill was filed, in September, 1818, was heard by the Union circuit court, and a decree pronounced — “That the marriage of the complainant Benjamin and defendant Mary be dissolved, and that they be forever divorced from the bonds of matrimony, agreeably to the act of assembly, in such case made and provided.”
The act referred to in the decree, was passed in 1808, ch. 31; the first and second sections of which give the circuit courts power to grant divorces for different causes; one of which is the abandonment of the bed and board of the husband by the wife fyr three years next before the filing of the bill; and the sixth section provides — “That j such divorce shall not operate so as to release the offend-fing party, who shall, nevertheless, remain subject to all the pains and penalties which the law prescribes, against a marriage while a former husband or wife is living; nor shall it authorize the injured party again to contract matrimony within two years from the time of pronouncing :■ such final decree.”
*112 The 7th section of the act gives the court power to divide the property, both real-and personal,-of the husband and wife, in such parts as will be equitable, and suited íó the situation and circumstances of the parties, and the children, if any.
Whilst Benjamin May was living, to wit, in 1821, the said Mary intermarried with John Dickson: on the 20th of July, 1822, John Dickson died.1 The marriage between John and the petitioner took place in the county of Dickson and State of Tennessee, where the parties then resided, and where John Dickson resided at the time of his death.
John Dickson died seised and possessed of a tract of land, lying in Dickson county in this State, of which the petitioner prays to have dower assigned her, which is opposed by the heirs of John Dickson, on the ground, that the marriage be’jyyeen him and Mary May was void, on account of her former marriage with Benj. May, in the State of Kentucky.
This cause has been argued with great ability and perseverance, both for and against the petitioner, and presents a question of great political importance to the people of this State. Before the divorce of Mary May, had she come to this .State and married John Dickson, she would have been guilty of bigamy, for it matters not in . what community the first marriage has taken place, or in what form, so that it was legal in the country where it was solemnized; if the second were to take place here, it would be bigamy. Act of 1820, ch. 12, 1 Hawk. 174. 1 East’s cr. law, 464.
In every known Christian country,polygamy is prohibited, under severe penaltie|, and marriages encouraged and protected. By the English Canon and Ecclesiastical law, this union of marriage is of a nature so widely differing from ordinary contracts, creating disabilities and conferring privileges between the husband and wife, producing interests, attachments and feelings, partly from necessity, but mainly from a principle in our nature, which together, form the strongest ligament in human society; *113 without which, perhaps, it could not exist in a civilized .... . _ _• _ _ _ _ state: it is a connection ox such a deep-toned and solemn character, that society has even more interest in preserving it than the parties themselves. So it has been deemed by all societies, civilized, and not corrupt, in all ages, as will be seen by consulting Paley, Puffendorf &c. Certain it is, that moral and political writers of the greatest eminence, and, what is more, communities of the first political wisdom, rarely, if at all, sanction divorces dissolving the marriage compact. I think not too much will be asserted, when it is said, that when a community, upon every slight pretext, grants divorces, to gratify the lust or interest of particular individuals, as a general rule of policy, corruption and political death are approaching, anil not far distant from the constitution of such community.
Every honest and prudent man, who wishes well to the society in which he lives, ought to shudder whenever he sees the supreme power of the country legislating upon this subject. Nor should he as a judge, (if legally to be avoided,) give any aid to such as grossly offend against the solemnities of the marriage compact in a sister state, in considering of which, he would do well to adopt for his guide, and as a standard of his moral rectitude, the doctrine laid down by Mr. Paley, in his treatise on moral philosophy, chs. 7 and 8, on divorce and marriage.
If the petitioner is permitted, by the judgment of this court, to marry after her divorce in Kentucky, which restrained her from doing so there, without being subject to pains or forfeiture of any kind in this state, the consequence will be an invitation to every divorced man or woman, who has been the offending party, and is disabled from marrying at home, in every state in the union, and all other countries, to impose themselves as adventurers upon the population of this state; which, in a few years, will run the hazard of becoming the receptacle of-the refuse, proscribed, and prostituted vagabonds, outcasts from a population of fifteen or twenty millions in our sister states. The wretch who, for an infamous crime, has b een foi v^-ar- confined in a state prison, and his wife divorced *114 from him for this cause, may emigrate to the stale of /permessee? a singie5 free, and every way an unshackled man, with every privilege that the proudest possess, and here marry in safety*, whereas, had he done so a few yards north or south of an ideal boundary, death perhaps would have been the consequence of the act. If this is the law, (as I fear it is) it needs amendment. Influenced by the above considerations, and many others equally' to be abhorred, I have, with much perseverance, examined and endeavored to find some legal principle, that would avoid the marriage between the petitioner^ and John Dickson; but to my great regret I have not been able to yid any such principle. I will therefore briefly state, what I have found the law clearly to be, and leave to the legislature to do that which this court has not the power to do. Mary May was legally divorced from her husband, Benjamin May,by the Union circuit court in Kentucky; being a court of competent jurisdiction over the subject matter and the parties — the decree dissolving the marriage is conclusive on all the world. Roach vs. Graves, 1 Ves. 159. Burrow vs. Jemens, 2 Str. 733. Roache’s case, 1 Leach’s cr. c. 160. Mills vs. Duryee, 7 Cranch 481. 4 Johns. Rep. 34.
The statute of Kentucky provides, that the offending party (the petitioner in this case) shall not be released from the marriage contract, but shall be subject to all the pains and 'penalties of bigamy. It is impossible, in- the nature of things, that all the relations of wife shall exist when she has no husband; who, as soon as the decree dissolving the marriage was pronounced, was an unmarried and single man, freed from all connections and rela- ■ tions to his former wife: and equally so was the petitioner freed from all marriage ties and relations to Benjamin May, in reference to whom she stood like unto every man in the community. Therefore, he has no right to complain of the second marriage: — who has? — Not the commonwealth of Kentucky, whose penal laws cannot extend.beyond her own territorial jurisdiction, and cannot be executed or noticed in this state, where the second *115 marriage look place, and the violation oí said laws was effected. Folliott vs. Ogden, 1 H. Bl. 123, 135. Hutton vs. Moore 5 Wheaton 69. Conner vs. Green, 17 Mass. 540. Scavell vs. Canfield, 14 Johns. 338. U. S. vs. Lathrop, 17 Johns. 4.
I Had Mary May married a second time in Kentucky, ’feuch second marriage would not be void because she ,continued the wife of Benjamin May, but because such second marriage in that state would have been in violation of a highly penal law against bigamy; and it being a well settled principle of law that any contract which violates the penal laws of the country where made shall be void.
The inquiry with this courtis not, however, nor cannot be whether the laws of Kentucky have been violated by this second marriage — but have our own laws been violated? The act of 1820, ch. 18, against bigamy, declares it felony for any person to marry having a former husband or wife living. Mary May had no husband living, and is not guilty of bigamy by our statute; nor has she violated the sanction of any penal law oí this state.
No principle of comity amongst neighboring communities, can be extended to give force and effect to the penal laws of the one society, ex-territorially of the other; and, for many reasons, it would be equally inconvenient, not to say impracticable, to a'dopt the principle among sister states of the American union; for which this court has the conclusive authority of the supreme court of the U. S. in Hutton vs. Moore, 5 Wheaton, 68.
Therefore, Mary Dickson was lawfully married to John Dickson, and is entitled to dower.
Decree accordingly.