[No. 3353.  Decided January 27, 1900.]

MARY C. WILLEY, *Respondent,* v. PHILANDER L. WILLEY, $\frac{22}{f22}$ $\frac{115}{265}$

*Appellant.*

DIVORCE—PROHIBITION  ON  REMARRIAGE—MARRIAGE  IN  ANOTHER
STATE—VALIDITY.

A statute prohibiting the remarriage of either party within
six months after the rendition of a decree of divorce has no
extraterritorial force, and where one of the parties contracts mar-
riage in another state, valid under the laws of that state, the mar-
riage is valid in the state of the court rendering the divorce,
although the parties may return to the latter state and take up
residence there prior to the expiration of the statutory prohibi-
tion on remarriage.

Appeal from Superior Court, Thurston County.—Hon.
OLIVER V. LINN, Judge.  Affirmed.

*George C. Israel,* for appellant.

*Troy & Falknor,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—This appeal is from an order of the supe-
rior court granting suit money and attorney's fees to
plaintiff in an action for divorce.  Appellant raises objec-
tion to the order made on the ground that the facts stated
in the complaint for divorce, and the affidavits presented
by the plaintiff upon the hearing of the order, and the
admissions made by the plaintiff in her reply, taken to-
gether, negative the fact of a marriage between the
plaintiff and the appellant, and, when such fact appears
wanting upon the face of the record, the order granting
suit money and attorney's fees cannot be made.  In the
complaint a duly solemnized marriage was alleged to have
taken place at Santa Rosa, California, on the 6th day of
February, 1888.  Defendant, answering, alleges that on

the 6th day of February, 1888, the date of the alleged marriage, he had a living and undivorced wife residing in the then territory of Washington; that on the 8th day of June, 1888, defendant's said wife procured a divorce from him in the district court of Thurston county, Washington, but that the decree did not become absolute until the 8th of December following. When the answer was filed the plaintiff prayed leave to amend her complaint, and it was amended by alleging that, after the marriage between herself and the defendant was solemnized, they continued to live in Santa Rosa, California, until July 4, 1888, and during all of said time desired to be, and agreed to be, and lived together and cohabited as, husband and wife, and on July 4, 1888, they removed to this state and have since continued to reside here, living and cohabiting together as husband and wife, until the commencement of this suit.

The divorce act in force in this state at the time of the solemnization of the marriage in California was § 2008 of the Code of 1881, as follows:

" Whenever judgment for divorce from the bonds of matrimony is granted by the court, in this territory, the court shall order a full and complete dissolution of the marriage as to both parties: *Provided,* That neither party shall be capable of contracting marriage with a third person, until the period in which an appeal may be taken, under the provisions of the civil practice act, has expired; and in case an appeal is taken then neither party shall intermarry, with a third person, until the cause has been fully determined."

Counsel for appellant contends that defendant was incapable of contracting marriage until the period of six months, which is the time prescribed in the practice act as the time within which the appeal must be perfected, had elapsed. At the time that the formal solemnization of the marriage took place in Santa Rosa, the defendant then had

living in Washington territory an undivorced wife, but at that time both plaintiff and defendant were citizens of California. The plaintiff had no knowledge of any incapacity of the defendant to contract marriage. It is apparent that the ceremony of marriage which occurred on the 6th of February, 1888, between the plaintiff and defendant was void at the time; but the allegations are that thereafter they continued to live together as husband and wife, and assumed the matrimonial relations, and were held out as such where they then resided until the 4th of July following, when they removed to this state. The facts alleged show the validity of the marriage under the laws of California after the divorce was granted to the former wife of the defendant. 2 Deering, Civil Code of California, §§ 55, 57, 68; *Graham v. Bennet,* 2 Cal. 503; 1 Bishop, Marriage, Divorce and Separation, §§ 970, 345.

The general rule is that the *lex loci contractus* is controlling in adjudications involving the validity of marriage. See Story, Conflict of Laws (8th ed.), § 113. This is cited with approval in *Re Wilbur's Estate,* 8 Wash. 35, 37 (35 Pac. 407, 40 Am. St. Rep. 886).

Counsel for defendant maintains that the decree of divorce of the district court of Thurston county, entered on the 8th of June, 1888, was not absolute until six months thereafter. This involves the construction of § 2008 of the code, *supra.* It will be observed that the code declares that a full and complete absolution of the marriage as to both parties is decreed, but the proviso makes them incapable of contracting marriage with a third party until the time has elapsed in which an appeal may be taken.

In the case of *Moors v. Moors,* 121 Mass. 232, cited by counsel, the statute required that notice should be given to the defendant to show cause why an absolute decree should not be granted, and the court might or might not make the decree absolute on the final hearing. Likewise,

in the English case of *Wickham v. Wickham,* 6 Prob. Div.
11, the finality of the decree was after the absolute order
was made. Evidently the law of 1881 directs a final de-
cree ordering a full and complete dissolution of the mar-
riage as to both parties, and is distinguishable from the
decree *nisi* mentioned in the case cited.

Counsel seems to rely on *Warter v. Warter* (1890) L.
R. 15 Prob. Div. 152. That was a case arising under the
Indian divorce act of 1869, Act No. 4, which contained
the following provision:

"When six months after the date of any decree of the
High Court dissolving a marriage have expired, and no
appeal has been presented against such decree to the High
Court in its appellate jurisdiction, but not sooner, it shall
be lawful for the respective parties to the marriage to
marry again."

And there, also, the procedure was that the decree *nisi*
was pronounced, and six months thereafter such decree
might be made absolute. There the plaintiff, Tayloe, be-
ing a resident of India, instituted proceedings for the ab-
solution of his marriage on the ground of his wife's
adultery with Colonel Warter, and the decree *nisi* was pro-
nounced on May 19, 1879, which decree was made abso-
lute November 27, 1879; but pending the action, which
was undefended, Mrs. Tayloe went to England and was
immediately followed by Colonel Warter, and within less
than three months they were married. Colonel Warter
was the co-respondent in the divorce suit. The court said
Mrs. Tayloe was subject to the Indian law of divorce, and
she could only contract a valid second marriage by show-
ing that the incapacity arising from her previous marriage
had been effectually removed by the proceedings taken
under the law. This could not be done, as the Indian law,
like our own (English), does not completely dissolve the
tie of marriage until the lapse of the specified time after

the decree; and the court draws a distinction between this and cases where the incapacity to remarry is only attached to the guilty party, and observes that the latter are penal. It will be observed that here both husband and wife were residents of India, and Colonel Warter was a co-respondent and party before the court, and that the guilty defendant and co-respondent evidently left their residence in India to be married in defiance of the Indian prohibition, in England. In the case at bar both plaintiff and defendant were residents of the state of California, and the plaintiff was entirely without knowledge of the prohibition contained in the statute of 1881. Under the law of California (2 Deering, Civil Code, § 91), the effect of a judgment decreeing a divorce is to restore the parties to the status of unmarried persons. *Barber v. Barber,* 16 Cal. 378. There was evidently no impediment to a common law marriage under the laws of California at the time that plaintiff and defendant consented to be husband and wife. It seems to have been generally considered by the courts of this country that similar prohibitions as existed in the statute against the parties remarrying within six months after the decree of divorce have no effect beyond the jurisdiction of the state.

Nelson on Divorce and Separation (vol. 2, § 588), observes:

" The marriage is completely dissolved by a decree of divorce, and all the obligations created by that relation are discharged, and the parties stand as though no such relation had existed. The marriage relation is as completely dissolved by divorce as by death. Therefore, on the entry of a decree of divorce, both parties are entitled to marry again. . . . Generally, the remarriage is prohibited within a specified period; as, five years. . . . The authorities are almost uniform that such statutes, being penal, have no extraterritorial operation, and unless there is an express provision making a marriage entered

into in another state void, the guilty party may contract a valid marriage in another state, even though both parties are residents of the state where the decree was rendered, and went out of the state to evade the laws." *Dickson v. Dickson's Heirs,* 9 Tenn. 110 (24 Am. Dec. 444); *Fuller's Adm'r v. Fuller,* 40 Ala. 301; *Wilson v. Holt,* 83 Ala. 528 (3 South. 321, 3 Am. St. Rep. 768); *Van Storch v. Griffin,* 71 Pa. St. 240.

This view was also intimated by this court in *In re Wilbur's Estate,* 8 Wash. 35, 38 (35 Pac. 407, 40 Am. St. Rep. 886); and without further distinguishing the case of *In Re Smith's Estate,* 4 Wash. 702 (30 Pac. 1059, 17 L. R. A. 573), cited by counsel for defendant, it may be said that in that case the parties were all residents of this state, and the marriage solemnized in the face of the prohibition of the statute then in force.

We do not think the prohibitions of the code of 1881 were in effect beyond the jurisdiction of the state or territory, and, upon the face of the record presented, the validity of the marriage is shown. The amount allowed as suit money and attorney's fees is peculiarly within the discretion of the superior court, and it does not appear that there was any abuse of that discretion in the order made.

The order is affirmed.

DUNBAR and FULLERTON, JJ., concur.

GORDON, C. J.—I think this case falls squarely within the decision of this court in *In Re Smith's Estate,* 4 Wash. 702 (30 Pac. 1059, 17 L. R. A. 573), in which it was held that a decree of divorce "cannot be held to be full and complete until the time mentioned in the provision (six months) has expired." That case decided squarely that the statutory restriction against marrying within the prohibited period was a limitation upon the decree of divorce, and rendered it inoperative during the period mentioned. The unmistakable logic of that case is that the former

marriage is not dissolved until six months after the entry of the decree. If that be true, then it is immaterial whether the subsequent marriage within that period occurs within or without the state; the fact remains that the former marriage is not dissolved. I am convinced that the decision in that case is opposed to the great weight of authority upon the question. It ought, however, to be met squarely, and either sustained or overruled. If sustained, the order in the present case should be reversed.

The statute contains no expressed words of nullity, and marriages contracted in violation of it are not void; they are voidable, if the appeal be taken within the period prescribed.

The right to marry does not spring from the statute, but existed prior to its enactment, and unlawful marriages are not void unless expressly declared to be so. *Park v. Barron,* 20 Ga. 702 (65 Am. Dec. 641), and authorities there cited. See, also, *Mason v. Mason,* 101 Ind. 25.

I think the doctrine of the *Smith Case* should be overruled, and I concur in affirming the order appealed from.