[No. 6816.   Decided November 15, 1907.]

THE STATE OF WASHINGTON, *Appellant*, v. ELIZABETH FENN, *Respondent*.[1]

MARRIAGE—VALIDITY—PLACE OF CONTRACT—DIVORCE—RIGHT TO REMARRY—STATUTES—EXTRA-TERRITORIAL FORCE. Laws 1893, p. 225, prohibiting divorced parties from remarrying within six months after the decree, either within or without the state, renders a remarriage during such period void, if contracted in this state, or if contracted in a foreign country by persons domiciled in this state with the purpose of evading the laws of this state; but if the parties were, at the time of the remarriage, domiciled in the foreign country, the marriage would be valid here if valid in such country; our statute having no extra-territorial force as to marriage by nonresidents.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered March 16, 1907, upon sustaining a demurrer to the information, dismissing a prosecution for the crime of bigamy. Reversed.

*H. G. Rowland, Robert M. Davis*, and *H. G. Fitch*, for appellant.

*Edward E. Cushman* and *Daniel Landon*, for respondent.

RUDKIN, J.—An information was filed against the defendant in the court below accusing her of the crime of bigamy. A demurrer to the information was sustained, and the state refusing to plead further, judgment of dismissal was entered, from which the present appeal is prosecuted.

[1]Reported in 92 Pac. 417.

36—47 WASH.

The information is in the usual form in such cases and charges a crime, unless it contains matter which if true would constitute a defense to the action. The matter set forth in the information and relied on as a defense is this: the respondent was lawfully divorced from one Edward Hodges, her then husband, by the superior court of King county, in this state, in the month of February, 1901. Within ten days after obtaining such divorce, she married one Joseph Clark in Victoria, B. C., and continued to cohabit with him until the month of January, 1907, such marriage being valid according to the laws of British Columbia where contracted. The alleged bigamous marriage was contracted in Pierce county in this state on the 16th day of January, 1907, with one Arthur Fenn. If the Victoria marriage was valid in this state the information charges a crime; but if invalid, the respondent had no husband living at the time of the Fenn marriage and the judgment should be affirmed. The question thus presented calls for a construction of § 1 of the act of March 9th, 1893, Laws 1893, p. 225, which reads as follows:

"Section 1. Whenever a judgment or decree of divorce from the bonds of matrimony is granted by the courts in this state, neither party thereto shall be capable of contracting marriage with a third person until the period in which an appeal may be taken has expired; and in case an appeal is taken then neither party shall intermarry with a third person until the cause has been fully determined; and it shall be unlawful for any divorced person to intermarry with any third person within six months from the date of the entry of the judgment or decree granting the divorce, or in case an appeal is taken it shall be unlawful to contract such marriage until judgment be rendered on said appeal in the supreme court. All marriages contracted in violation of the provisions of this section, whether contracted within or without this state, shall be void."

In support of its appeal the state relies upon the two general propositions that a marriage, valid where contracted, is valid everywhere, and that statutes declaring a second marriage unlawful, pending the time for appeal from divorce proceedings

and imposing a penalty for their violation, are penal in their nature and have no extraterritorial effect.

The general doctrine that a marriage valid where contracted is valid everywhere, has so often been declared by the courts and reiterated by text writers that it has become a maxim of the law.    But there are exceptions to the rule as well established as the rule itself, viz.: (1) incestuous and polygamous marriages prohibited by natural law; and (2) marriages prohibited by positive law.    The Victoria marriage now under consideration may fall within the second exception.    *Willey v. Willey,* 22 Wash. 115, 60 Pac. 145, 79 Am. St. 923; *Putnam v. Putnam,* 8 Pick. 433; *People v. Chase,* 28 Hun. 310; *Van Voorhis v. Brintnall,* 86 N. Y. 18, 40 Am. Rep. 505; *Thorp v. Thorp,* 90 N. Y. 602, 43 Am. Rep. 189, and other cases, cited by the appellant, to the effect that statutes declaring in general terms that certain marriages contracted in violation of their provisions shall be void have no extraterritorial effect, have no application here.    The decisions were all based on the general language of the acts under consideration, the courts holding that it did not appear that the respective legislatures intended that the acts should apply to marriages contracted without the state.    The statute of this state, however, admits of no such construction.    It declares in direct and positive terms that all marriages contracted in violation of its provisions, "whether contracted within or without this state shall be void."

The power of the state to declare void marriages contracted beyond its borders, at least where such marriages are contracted by its own citizens in violation of its laws, cannot be denied.    Thus in *Kinney v. Commonwealth,* 30 Gratt. 858, a negro man and a white woman, domiciled in Virginia, went to the District of Columbia, and were there regularly married. About ten days thereafter they returned to Virginia, and were prosecuted for lewd and lascivious cohabitation.    The Court of Appeals of that state ruled that the marriage in the District of Columbia was a mere evasion of the laws of the Com-

monwealth prohibiting such marriages, and could not be
pleaded in bar of the prosecution, though the marriage was
confessedly valid in the District of Columbia where contracted.
In *Williams v. Oates*, 27 N. C. 535, it was held that a marriage
contracted in South Carolina by a citizen of North Carolina,
in violation of the statute of North Carolina, forbidding the
guilty party to a divorce proceeding to marry again, was void
in North Carolina, though valid in South Carolina where con-
tracted. To the same effect see *Pennegar v. State*, 87 Tenn.,
244, 10 S. W. 305. In *State v. Kennedy*, 76 N. C. 251, 22
Am. Rep. 683, it was held that a marriage between a negro
man and a white woman, domiciled in North Carolina, but con-
tracted in South Carolina in violation of the laws of North
Carolina, was void in North Carolina, though valid in South
Carolina. On the other hand, the same court held in *State v.
Ross*, 76 N. C. 242, 22 Am. Rep. 678, that a marriage con-
tracted between a negro and white person in South Carolina
where lawful, both parties being domiciled there, was valid in
North Carolina. In *State v. Tutty*, 41 Fed. 753, it was held
that a marriage between a white person and a negro, domiciled
in Georgia, is utterly void under the Georgia statute, though
valid in the District of Columbia where contracted. In *Brook
v. Brook*, 9 H. L. Cas. \*193, it was held that the marriage of
British subjects in Denmark is invalid in England, if pro-
hibited by British law, though the marriage was valid accord-
ing to the laws of Denmark.

It will thus be seen that a state law regulating marriage
may and does have an extraterritorial effect when the legisla-
ture so intends, at least where the parties to the marriage have
their domicile within the state; and there is no escape from the
conclusion that our legislature intended that all marriages
contracted within the state, and all marriages contracted with-
out the state by persons domiciled here, for the purpose of
evading our laws, should be null and void. The statute is un-
doubtedly broad enough to include all marriages contracted
within the time specified, regardless of the place where con-

tracted and regardless of the domicile of the parties, but we do not think that such was the legislative intent. If the statute should be construed to avoid marriages contracted in other states by citizens of other states who never owed allegiance to our laws, it is the most drastic piece of legislation to be found on the statute books of any of our states. As we have shown, the general rule is that the validity of a marriage is determined by reference to the law of the place where contracted. An exception to the general rule is sometimes made in favor of the law of the domicile of the parties. But a statute declaring marriages void, regardless of where contracted and regardless of the domicile of the parties, would be an anomaly and so far reaching in its consequences that a court would feel constrained to limit its operation, if any other construction were permissible.

We are satisfied that the prohibition in question was directed solely against marriages within the state, or by persons domiciled within the state, but contracted in other states for the purpose of evading our laws, and that no other persons or marriages are included or contemplated. Within the above rule, the information before us does not contain matter which constitutes a defense, for it does not appear that the Victoria marriage was void. If the parties to the Victoria marriage had their domicile in this state at the time the marriage was contracted, and went to Victoria for the purpose of evading our laws and thereafter returning to this state, such marriage was null and void, and, much as we regret it, the prosecution must fail. If, on the other hand, the parties to the Victoria marriage were domiciled there at the time the marriage was contracted, such marriage does not fall within the prohibition of our statute and is valid.

The judgment of the court below is therefore reversed, with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

MOUNT, ROOT, DUNBAR, and FULLERTON, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.