[No. 8753. Department One. June 3, 1910.]

DORA L. PIERCE, *Appellant*, v. CHARLES REUBEN PIERCE, *Respondent.*[1]

DIVORCE—MARRIAGE—RIGHT TO REMARRY—DOMICILE—INTENT OF PARTIES. Where a person is divorced in this state, and marries again in another state or country within the prohibited period during which an appeal from the divorce decree could have been taken, in violation of Rem. & Bal. Code, § 991, the validity of the marriage depends upon the domicile of the party at the time of the marriage, the statutes of this state having no extraterritorial force except as to parties domiciled in this state who leave for the purpose of evading the law and returning to their domicile.

DIVORCE—RIGHT TO REMARRY—DOMICILE—EVIDENCE OF INTENT— SUFFICIENCY. Where the validity of a marriage depends upon the domicile of the parties and the legitimacy of a child is involved, all doubts are resolved in favor of its validity; and the evidence is insufficient to show that a divorced woman who married again shortly after in Victoria, B. C., was domiciled in this state and left here with the intent to evade our laws and return, where she testified positively that she objected to such a proceeding on the ground of its illegality, and acted upon a suggestion that she go there to live, being assured that she would like it there, and it appears that the other party to the marriage had his business up for sale, went to Victoria alone, and sent back for her to come and be married, and after the marriage, they returned to this state because he saw no opening for business there, and they then lived in this state as husband and wife, where they had one child.

SAME—ESTOPPEL. In such a case, the man should not be heard to deny the marriage if he induced the woman to leave the state to marry him with an intent to establish a domicile in another country.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 8, 1910, dismissing, at the close of plaintiff's case, an action for separate maintenance, after a hearing before the court. Reversed.

*Marion Edwards, E. L. Sanders,* and *Carroll A. Gordon,* for appellant.

*John C. Witt* and *Blaine, Tucker & Hyland,* for respondent.

[1] Reported in 109 Pac. 45.

CHADWICK, J.—Dora L. Pierce and Charles Reuben Pierce were married at Victoria on March 15, 1907, and lived together as husband and wife until April, 1909, when Mrs. Pierce was abandoned by defendant. One child has been born to them. This action was begun by plaintiff to compel maintenance on the part of the defendant. The court below held the marriage to be void, and from a judgment of dismissal, this appeal is waged. The trial court found that, inasmuch as the appellant had been divorced from a former husband in the superior court of King county and had remarried within six months after the entry of the decree, and it appearing that they were domiciled in this state, the marriage was void under Rem. & Bal. Code, § 991. Such facts as are material to our discussion will be set out in the body of the opinion.

The question before us was first considered by this court in *In re Smith's Estate*, 4 Wash. 702, 30 Pac. 1059, 17 L. R. A. 573. It was there held that the original statute (2 Hill's Code, § 771) providing that a remarriage should not take place within the time limited for appeal, had extraterritorial effect, and that a marriage within that time, whether performed within or without the state, was void. In *Willey v. Willey*, 22 Wash. 115, 60 Pac. 145, 79 Am. St. 923, the same statute being under consideration, it was held that the statute had no extraterritorial effect, the court attempting to disinguish the *Smith* case rather than overruling it as was suggested in the dissenting opinion. In the *Willey* case the court said, in referring to the *Smith* case:

"It may be said that in that case the parties were all residents of this state, and the marriage solemnized in the face of the prohibition of the statute then in force;"

showing that the question of domicile was in the mind of the court at the time the decision was pronounced.

The first and only case construing the statute of 1893, Rem. & Bal. Code, § 991, is that of *State v. Fenn*, 47 Wash.

561, 92 Pac. 417, 17 L. R. A. (N. S.) 800. By that statute
it is provided that, "all marriages contracted in violation of
the provisions of this section, whether contracted within or
without this state, shall be void." In that case the marriage
had occurred in Victoria within ten days after the decree of
divorce had been rendered in King county. The conclusion of
the court was:

"We are satisfied that the prohibition in question was
directed solely against marriages within the state, or by
persons domiciled within the state, but contracted in other
states for the purpose of evading our laws, and that no
other persons or marriages are included or contemplated.
Within the above rule, the information before us does not
contain matters which constitutes an offense for it does not
appear that the Victoria marriage was void. If the parties
to the Victoria marriage had their domicile in this state at
the time the marriage was contracted, and went to Victoria
for the purpose of evading our laws and thereafter returning
to this state, such marriage was null and void, and, much as
we regret it, the prosecution must fail. If, on the other hand,
the parties to the Victoria marriage were domiciled there at
the time the marriage was contracted, such marriage does
not fall within the prohibition of our statute and is valid."

In *Johnson v. Johnson*, 57 Wash. 89, 106 Pac. 500,
a marriage entered into by persons within prohibited de-
grees of consanguinity was held to be void where it appeared
that the parties were domiciled in this state and that to avoid
our local law they went to Victoria, were there married, and
immediately returned to their domicile.

Reference to the several decisions mentioned will show that
the court has striven to reconcile two rules of law, each de-
signed to serve a strict public policy; the one that a mar-
riage, legal under the law of the place where contracted, is
legal everywhere, and the other that divorced persons shall
not remarry within the time allowed for appeal. In thus
struggling to serve, as it would seem, the higher purpose, the
courts have left this question not so much one of law, but of
mixed law and fact, the positive inhibition of the statute

being held to apply only to citizens of this state. Thus, the question of domicile is made the supreme and controlling one in all cases of this character. So, as was intimated, if not positively held, in the *Fenn* and *Willey* cases, courts will go beyond the record of the marriage and inquire into the intent or domicile of the parties. If the marriage is entered into by one who has in good faith removed to another jurisdiction, not for the mere purpose of the marriage or to evade the rigor of the local law, but to establish a domicile, the marriage should be held to be valid. Whereas, if it appears that the parties, being domiciled in this state, have gone to another jurisdiction with the primary intent to evade our law and marry in defiance of it, the marriage should be held to be void.

This brings us to the facts in this case. Appellant and respondent had become acquainted prior to her divorce. The subject of marriage had been discussed between them, and we think there is no doubt of the anxiety of the respondent to hasten the divorce as well as his own marriage with appellant. After appellant's divorce, she says that he frequently importuned her to go to Victoria, or some other place, to be married; that she refused to consider any such proposition because, in her judgment, it would be illegal under the laws of this state. Their relations appear to have been amicable up to about March 13, when, without taking any leave of appellant, respondent went to Victoria. On the way he fell in with a mutual friend, with whom he had a conversation with reference to appellant, and told him that he was going to Victoria "to get away from the girl." The friend advised him to either return to Seattle or to have her come to Victoria and marry her. Upon arriving at Victoria, he telephoned appellant to come to Victoria and be married. She gave up a position then held by her, and her room, and went to Victoria, respondent meeting her at the wharf. He had previously procured a license, and they were driven to the home of a clergyman and were there married. After

40—58 WASH.

three or four days, respondent told appellant that he could find no opening for business in Victoria, and they would return to Seattle, which they accordingly did. Thereafter respondent purchased a home, and the parties lived together until the desertion. It may be that in all this no intention to change his domicile can be attributed to respondent. But appellant swears positively that he met her objection to the proposition that they marry immediately, by suggesting that they could go to California or British Columbia and live there and the marriage would be legal. She swears, too, that it was her understanding that they were to live in Victoria; that she went there so intending; that he met her exclamations as to the beauty of the place and its surroundings with the assurance that she would like it there. She swears, too, that he had his business up for sale, and expected that it might be sold at any time. They afterwards returned to Seattle for the reason, as appellant says, that respondent saw no opening for business in Victoria and said that he would have to return to Seattle in order to get more money. She is corroborated in some of these things by other witnesses.

We confess that the testimony is not altogether satisfactory. But in a case like this, where the validity of the marriage depends on the domicile, all doubts should be resolved in favor of appellant's testimony, the validity of the marriage, and the legitimacy of the child. If, then, the appellant went to Victoria *animus manendi*, induced by respondent's conduct, he should not be heard to deny the marriage when the consequences would fall so heavily upon the head of innocence. We know of no public policy which will warrant a court in annulling a marriage between competent parties if there be any evidence to sustain it, and especially so where it appears that the parties have consummated the marriage, a child has been born, and the offending party has been openly acknowledged as a spouse. It will not be done unless it clearly appears that the parties willfully went beyond the jurisdiction of the courts of this state to

avoid and defy our laws. It is not clear that they did so in this case.

The judgment of the lower court is reversed, and the case remanded for further proceedings in accordance with this opinion.

RUDKIN, C. J., GOSE, MORRIS, and FULLERTON, JJ., concur.