Submitted on briefs January 6, reversed January 27, 1925.

# FRANK M. HUARD v. JENNIE McTEIGH.

## (232 Pac. 658.)

**Divorce—Valid Marriage Prerequisite to Divorce.**

1. A valid marriage is a prerequisite to divorce.

**Divorce—Marriage Void Where Contracted Out of the State to Evade Its Divorce Decree.**

2. Marriage is void in Washington where, merely to evade statute and divorce decree of that state, a party to the decree and another are within six months of decree married outside such state, returning immediately thereafter.

**Marriage—Doctrine of Common-law Marriage not Recognized in Washington.**

3. Doctrine of common-law marriage is not recognized in state of Washington.

**Divorce—Marriage Void in British Columbia, Where a Party was Under Disability from Divorce Decree.**

4. Marriage contracted in British Columbia is there void, having been contracted within the period that one of the parties was under disqualification by reason of six months' statutory prohibition in divorce decree obtained in a state.

**Marriage—No Common-law Marriage in British Columbia Simply Because of Invalid Ceremony There.**

5. A valid common-law marriage was not consummated in British Columbia merely because the civil ceremony there performed was invalid; the parties not having there cohabited and lived together, but on the same day returned to their domicile in Washington.

**Marriage—Marriage Invalid in Third State When Invalid Where Celebrated and in State of Parties' Domicile.**

6. Marriage invalid in British Columbia, where celebrated, and also in Washington, where the parties were domiciled, because of evasion of prohibition in divorce decree obtained by one of the parties in Washington, was invalid in Oregon, on the parties coming there to live.

---

1. See 9 R. C. L. 267.

2. Effect of marriage within prescribed time after divorce, see notes in 1 Ann. Cas. 202; Ann. Cas. 1918E, 557. See, also, 18 R. C. L. 445; 9 R. C. L. 274.

3. Validity of common-law marriage in American jurisdictions, see notes in Ann. Cas. 1912D, 598; Ann. Cas. 1917E, 252. See, also, 18 R. C. L. 397.

5. See 18 R. C. L. 395.

Extraterritorial effect of divorce decree or statute prohibiting marriage within a certain time after divorce, see notes in 15 Ann. Cas. 758; Ann. Cas. 1918E, 1074.

**Marriage—Common-law Marriages not Valid in Oregon.**

7. Common-law marriages are not valid in Oregon, but contrary to its 'public policy concerning the solemnization of marriage, as clearly expressed by Sections 9723, 9724, 9729, 9731, 9737, Or. L., which must be held mandatory.

**Marriage—Complaint for Annulment Sufficient.**

8. Complaint showing that at time of marriage defendant was in contemplation of law a married woman, by reason of prohibition in divorce decree against remarriage within six months, *held* to state cause of action for annulment.

---

See (1) 19 **C. J.** 76. (2) 19 **C. J.** 184. (3) 26 **Cyc.** 841. (4) 19 **C. J.** 184. (5) 26 **Cyc.** 837. (6) 26 **Cyc.** 831. (7) 26 **Cyc.** 841. (8) 26 **Cyc.** 901.

From Multnomah: LOUIS P. HEWITT, Judge.

In Banc.

The plaintiff for his cause of suit herein to have his marriage with the defendant declared null and void alleges:

"That plaintiff and defendant now are and for over a year prior to the commencement of this suit have been resident(s) of the State of Oregon, and plaintiff and defendant are both residents of Multnomah County, Oregon.

"That at Seattle, Washington, on January 8th, 1902, defendant, whose name was Jennie Corcoran, married Joseph McTeigh. On August 1st, 1905, defendant in this action secured a decree of divorce from said Joseph McTeigh.

"That said Jennie McTeigh and said Joseph McTeigh were residents and inhabitants of the State of Washington, and for over one year prior to the commencement of an action by said Jennie McTeigh against Joseph McTeigh for divorce in the Superior Court of the State of Washington for King County, and in said action, on August 1st, 1905, the following decree was entered, to wit:

---

7. See 18 R. C. L. 397.
8. See 9 R. C. L. 274.

" 'Comes now on this —— day of July, A. D. 1905, the above plaintiff by her attorney, P. D. Hughes, Esq., and moved this Honorable Court, for judgment and decree in her favor; and the court having heretofore made its finding of fact and conclusions of law, and having duly considered the same, Now THEREFORE, it is by the Court ordered, adjudged, and decreed that the marriage heretofore, and now existing between the plaintiff, Jennie McTeigh, and the defendant, Joseph McTeigh, be dissolved and the same hereby is dissolved accordingly; and the said parties are, and each of them hereby is, freed from the bonds of matrimony and all the obligations thereof.

" 'IT IS FURTHER ordered that neither the plaintiff or the defendant shall contract any marriage with any third party for the period of six months from the date of the entry of this decree, as by law provided, and they hereby are and each of them hereby is, expressly restrained and prohibited from so doing. * * ,

"That on October 12th, 1905, at Victoria, British Columbia, this plaintiff and said defendant, Jennie McTeigh, went through a form of marriage without this plaintiff being aware of the inhibitory clause of said decree, or being aware of the facts of the aforesaid marriage, and that at the time of said pretended marriage of this plaintiff and this defendant, this plaintiff and this defendant were residents and inhabitants of the State of Washington.

"That the following sections of Remington & Ballinger's Annotated Codes and Statutes of Washington were, and ever since have been in force and effect, and at all times mentioned in this complaint, to wit:

" '991 (5725) Remarriage Pending Appeal Unlawful. Whenever a judgment or decree of divorce from the bonds of matrimony is granted by the courts in this state, neither party thereto shall be capable of contracting marriage with a third person until the period in which an appeal may be taken has expired; and in case an appeal is taken then neither party shall intermarry with a third person until the cause has

been fully determined; and it shall be unlawful for any divorced person to intermarry with any third person within six months from the date of the entry of the judgment or decree granting the divorce, or in case an appeal is taken it shall be unlawful to contract such marriage until judgment be rendered on said appeal in the supreme court. All marriages contracted in violation of the provisions of this section, whether contracted within or without this state, shall be void. (L. '93, p. 225, par. 1.)

" '992 (5726) Decree to Prohibit Remarriage Within Six Months. Whenever judgment or decree of divorce from the bonds of matrimony is granted by any court in this state, such judgment or decree shall expressly prohibit the plaintiff and defendant named therein from contracting any marriage with third parties within the period of six months from the date of the entry of such judgment or decree, and in case either party to said decree shall remarry within said period, he or she shall be deemed guilty of contempt of the court granting such judgment or decree, and shall be proceeded against and punished in like manner as in other cases of contempt of court. (L. '93, p. 226, par. 2.)'

"That said form of marriage between plaintiff and defendant was and ever since has been and now is null and void."

The defendant in her answer, so far as is material to a consideration of this case, alleges that she obtained a decree of divorce from her former husband, Joseph McTeigh, at Seattle, Washington, on the first day of August, 1905, and that there was a valid marriage consummated with the plaintiff at Victoria, British Columbia, on the twelfth day of October, 1905. She alleges that the plaintiff herein was well aware of and acquainted with the terms of the decree of divorce obtained by her in Washington, and that she went to British Columbia for the purpose of being married at his special instance and request. She

further states that prior to her marriage with the plaintiff she was advised and believed that a marriage performed in British Columbia would be valid regardless of the prohibitory clause in the divorce decree. She claims that on the same day the marriage ceremony at Victoria was performed they returned to Seattle, Washington, and continued to reside there as husband and wife until 1916, when they moved to Portland, Oregon, and that they have continuously resided in this state, living and cohabiting together as man and wife, to the time of the commencement of this suit. As a further and separate answer, and by way of cross-complaint, she charges plaintiff with cruel and inhuman treatment. These affirmative matters are denied by the reply.

In this controversy the question of property rights or of legitimacy of children is not involved. The Circuit Court, after trial of the issues above stated, rendered a decree of divorce in favor of the defendant and awarded her certain alimony and attorney's fees. The plaintiff appeals.    REVERSED.

For appellant there was a brief over the name of *Mr. George S. Shepherd.*

For respondent there was a brief over the names of *Mr. John P. Hannon* and *Mr. James P. Stapleton.*

BELT, J.—1. The principal question for decision in this case is the validity of the alleged marriage between the parties hereto, as we concede, in keeping with the findings of the trial court, that the defendant has by a preponderance of testimony established her allegations of cruel and inhuman treatment. The decree as rendered in the court below is necessarily predicated upon the premise of a valid marriage. If there was not a valid marriage between these

parties, it follows that there could not be a dissolution of the same. We cannot dissolve that which in fact does not exist. It is necessary in this case to consider the marital status of these parties as determined by the law of Washington, British Columbia, and Oregon.

2, 3. Let us consider first the legal status of the parties hereto under the law of Washington. The record discloses beyond doubt that both parties left the place of their domicile and went to British Columbia for the purpose of evading the force and effect of the prohibitory clause in the decree of divorce in reference to the right of remarriage. The decree of divorce, among other things, provided:

"It is further ordered that neither the plaintiff or the defendant shall contract any marriage with any third party for the period of six months from the date of the entry of this decree as by law provided, and they hereby are, and each of them is, expressly restrained and prohibited from so doing."

In defiance of this decree, and against the advice of her mother and sister, the defendant went to Victoria for the purpose as above stated. When asked by her own counsel why she and the plaintiff went to British Columbia to be married, she replied, "Well, we knew we couldn't be married in Seattle." Under such state of facts it is well established that so far as the State of Washington is concerned the marriage of these parties is null and void: *Knoll* v. *Knoll,* 104 Wash. 110 (176 Pac. 22, 11 A. L. R. 1391); *Hahn* v. *Hahn,* 104 Wash. 227 (176 Pac. 3); *Peerless Pacific Co.* v. *Burckhard,* 90 Wash. 221 (155 Pac. 1037, Ann. Cas. 1918B, 247, L. R. A. 1917C, 353); *Pierce* v. *Pierce,* 58 Wash. 622 (109 Pac. 45); *State* v. *Fenn,* 47 Wash. 561 (92 Pac. 417, 17 L. R. A. (N. S.) 800). Until the expiration of the statutory period against remarriage had expired the defendant did not have

capacity to enter into a contract of marriage. In contemplation of law her social status was the same as if no decree had been made. At the time of her alleged marriage at Victoria she had a husband living. This marriage at the time of its inception was, therefore, polygamous in character. When persons enter into a contract of marriage, either pursuant to statute or common law, it is essential to the validity of the same that they have capacity and are competent so to contract. We need not be concerned with the question as to whether the relationship existing between the plaintiff and defendant while they resided in Washington constituted a common-law marriage in that jurisdiction, for it is well settled that such doctrine is not recognized in that state: *Neton* v. *Industrial Acc. Com.,* 104 Wash. 652 (177 Pac. 696); *In re Brenchley's Estate,* 96 Wash. 223 (164 Pac. 913, L. R. A. 1917E, 968); *Buckley* v. *Buckley,* 50 Wash. 213 (96 Pac. 1079, 126 Am. St. Rep. 900); *In re McLaughlin's Estate,* 4 Wash. 570 (30 Pac. 651, 16 L. R. A. 699).

4, 5. Having reached the conclusion that the marriage in question is null and void as determined by the law of Washington, we will now consider it in reference to the law of British Columbia, where the marriage was solemnized. Section 4 of Chapter 129 of the Revised Statutes of British Columbia provides:

"The Ministers and Clergymen of every church and religious denomination in British Columbia, and the Registrars appointed by the Lieutenant-Governor in Council under this Act may celebrate a marriage between any two persons, neither of whom shall be under a legal disqualification to contract such marriage."

MacDonald, J., *In re Marriage Act and Eaton,* 30 British Columbia Rep. 243, had occasion to con-

strue the above statutory provision in a case where the facts were similar to those in the one at bar. Eaton was divorced in the State of Washington on the 26th of June, 1921, and before the expiration of the prohibitory period relative to remarriage, he applied to the issuer of licenses for a license to marry in British Columbia. His application for license was refused and *mandamus* was brought to compel the issuance of the same. The court said:

"The application should be dismissed. The prohibition against remarriage of either party for a period of six months from the decree was not in the nature of a penalty, but formed an integral part of the decree, and is, therefore, a bar to the remarriage of both parties during the pendency of the prohibition. In the conflict between the law laid down in *Pierce* v. *Pierce,* 58 Wash. 622 (109 Pac. 45), and that in *Warter* v. *Warter,* 15 P. D. 152, the latter case is the controlling authority. The issuer of licenses was right in refusing to issue a license, and a *mandamus* is refused."

It will thus be seen that the courts of British Columbia by reason of the force and effect of the statute above quoted have gone further than the courts of Washington in holding invalid such marriages as in the instant case. If the parties hereto had gone to Victoria for the purpose of establishing their residence in British Columbia, and while there had consummated marriage, under such circumstances it would be deemed valid in Washington: *Pierce* v. *Pierce, supra; State* v. *Fenn, supra.* But not so in British Columbia, as there must be no legal disqualification existing at the time the marriage is solemnized. According to many authorities the fact that the plaintiff and defendant undertook to consummate a marriage at Victoria by virtue of a civil ceremony, even though illegal, and subsequently lived

together as husband and wife, such would constitute a common-law marriage. We believe the doctrine of common-law marriages has no application in determining the status of these parties in British Columbia, for the reason that they did not cohabit and live together until they returned on the same day of their marriage to the place of their domicile at Seattle, Washington. To constitute a common-law marriage there must be something in addition to the mere agreement of the parties that they will become man and wife. They must cohabit and live together as husband and wife and hold themselves out to the world as such. The authorities are much in conflict concerning this question, but the rule herein announced is, in our opinion, in keeping with the weight of authority and the better reasoned cases: *Topper* v. *Perry,* 197 Mo. 531 (95 S. W. 203, 114 Am. St. Rep. 777); *McKenna* v. *McKenna,* 180 Ill. 557 (54 N. E. 641); *Lorimer* v. *Lorimer,* 124 Mich. 631 (83 N. W. 609); *Grigsby* v. *Reib,* 105 Tex. 597 (153 S. W. 1124, Ann. Cas. 1915C, 1011, L. R. A. 1915E, 1). The contention that a valid common-law marriage was consummated in British Columbia merely by reason of the fact that a civil ceremony was performed at Victoria cannot be sustained. We hold that the marriage is invalid as tested by the law of British Columbia.

6. The general rule, for which we take it no authorities need be cited, is that a marriage valid where solemnized is valid everywhere. The converse of this rule, however, is more applicable to the case at bar: A marriage invalid where solemnized is invalid everywhere: *Hutchins* v. *Kimmell,* 31 Mich. 126 (18 Am. Rep. 164); *People* v. *Shaw,* 259 Ill. 544 (102 N. E. 1031, L. R. A. 1915E, 87). The legality of a marriage must be determined by the laws of the state in which the marriage is consummated: *Ollschlager's Estate* v.

*Widmer,* 55 Or. 154 (105 Pac. 717) ; *Sturgis* v. *Sturgis,* 51 Or. 16 (93 Pac. 696, 131 Am. St. Rep. 724, 15 L. R. A. (N. S.) 1034) ; *Nelson* v. *Carlson,* 48 Wash. 651 (94 Pac. 477). If it be conceded that this marriage is invalid in British Columbia, where the same was solemnized, and invalid in Washington, the domicile of the plaintiff and the defendant, then, if the above rule be sound law, why is it not invalid in Oregon? If the defendant had obtained the decree of divorce in Oregon and had gone to Victoria, British Columbia, and married the plaintiff under the circumstances as disclosed by the record herein, and in defiance of our statute relative to remarriage within six months from the date of entry of the decree, we would undoubtedly hold the marriage null and void: *Hooper* v. *Hooper,* 67 Or. 187 (135 Pac. 205, 525) ; *Sturgis* v. *Sturgis, supra; McLennan* v. *McLennan,* 31 Or. 480 (50 Pac. 802, 65 Am. St. Rep. 835, 38 L. R. A. 863). The marriage was invalid in its inception, and ever remained so while the parties resided in the State of Washington. Is this marriage now to become valid because the plaintiff and the defendant crossed our state line in 1920 and have continuously resided here, living and cohabiting as husband and wife, to the time of their separation in 1921? We think not. A majority of the cases hold, where the question of the validity of a marriage has arisen in a third state—that is, a state where the divorce was not obtained or the marriage celebrated,—that the same is valid if it was valid where celebrated, even though the parties left the state of their domicile to avoid the effect of a statute or a decree prohibiting remarriage within a specified time. Courts adopting the above rule invoke the doctrine that a marriage valid where celebrated is valid everywhere. The instant case is not controlled by this

line of authorities for the obvious reason that the
marriage in question was not valid where solemnized.
In conflict with the majority rule as above stated,
see *Lanham* v. *Lanham,* 136 Wis. 360 (117 N. W. 787,
128 Am. St. Rep. 1085, 17 L. R. A. (N. S.) 804);
*Hall* v. *Industrial Acc. Com.,* 165 Wis. 364 (162 N. W.
312, L. R. A. 1917D, 829); *Thompson* v. *Thompson,*
114 Mass. 566; *Atkeson* v. *Sovereign Camp, Woodmen
of the World,* 90 Okl. 154 (216 Pac. 467, 32 A. L. R.
1108, and exhaustive note).

7. The next question is whether common-law mar-
riages are valid in Oregon. Strange as it may seem,
this is the first time in the history of this court that
this question has been squarely before it for decision.
It is, indeed, a question of vital importance as it
strikes at the very foundation of society, and on ac-
count thereof we have given the matter careful con-
sideration. It is contended by counsel for respond-
ent, even though the marriage be considered invalid
in British Columbia and Washington, the impedi-
ment against remarriage had long been removed when
the plaintiff and the defendant came into this state,
and that having continued to cohabit and live to-
gether here as man and wife a common-law mar-
riage has been consummated of which we ought to
take cognizance. We are frank to admit that the
doctrine of common-law marriage is supported by
the weight of authority: *Travers* v. *Reinhardt,* 205
U. S. 423 (51 L. Ed. 865, 27 Sup. Ct. Rep. 563);
*Meister* v. *Moore,* 96 U. S. 76 (24 L. Ed. 826, see,
also, Rose's U. S. Notes); *Reed* v. *Harkrader,* 264
Fed. 834; *Poole* v. *People,* 24 Colo. 510 (52 Pac.
1025, 65 Am. St. Rep. 245); *Schuchart* v. *Schuchart,*
61 Kan. 597 (60 Pac. 311, 78 Am. St. Rep. 342, 50
L. R. A. 180). But even so, it remains for this court
to determine and declare the public policy of this

state relative to the marital status of the parties hereto, regardless of but with due deference to what other courts have said on the subject. This opinion would be greatly encumbered were we to review the history of the development of consensual marriages in this country or to consider and distinguish the decisions of various courts. Suffice it to say, the decisions are in hopeless conflict. For the majority and minority rules see note to case of *Furth* v. *Furth* (Ark.), Ann. Cas. 1912D, 598, where the cases are collated. The answer to this question depends upon whether our statutory provisions relative to marriage are mandatory or directory. If marriage in this state can be accomplished only in the manner and method as pointed out in the statute, it follows that its terms are mandatory and the contention of counsel for respondent would be untenable; but if these statutory provisions are to be construed as not pointing out an exclusive way in which a contract of marriage may be made, its provisions are merely directory and common-law marriages in this state would be valid. At common-law no particular form or ceremony was necessary to enter into a contract of marriage. It was sufficient if an agreement was made between the parties to become man and wife, and pursuant to such agreement they actually lived and cohabited together as such. Courts have universally held that this common-law right of marriage cannot be taken away without clear intent on the part of the legislature so to do. In fact, the majority of cases hold that the common-law rule is not abrogated unless the statute declares marriages null and void if not accomplished in the manner therein provided. The Supreme Court of the United States, following the majority rule, has held that statutes regulating marriages which do not in express terms

provide that marriages shall be void if not solemnized in accordance with their provisions are directory only and that common-law marriages are valid: *Meister v. Moore, supra; Travers v. Reinhardt, supra.* It seems to us that this is carrying the rule of statutory construction too far. As well stated by Mr. Justice SCOTT in his learned and scholarly opinion in *Re McLaughlin's Estate, supra:*

"It is true the legislature may expressly provide that all marriages not entered into in the ways pointed out by the statutes * * shall be held invalid, but this affords no reason for not giving effect to the clear intention otherwise expressed in the legislation existing, because the legislature has not expressly declared all others void."

In our opinion, if it appears by clear and strong implication that our legislative enactments as viewed in their entirety were intended to abrogate the rule relative to common-law marriages, we ought to give effect to the same. It is purely a question of determining the intention of the legislature whether that intent be expressly or impliedly stated, having due regard to the general rule of statutory construction that acts in derogation of the common law are to be strictly construed. In *Milford* v. *Worcester,* 7 Mass. 48, Chief Justice PARSONS said:

"It has been truly observed by the counsel for the plaintiffs that a marriage engagement of this kind is not declared void by any statute. But we cannot thence conclude that it is recognized as valid, unless we render in a great measure nugatory all the statute regulations on this subject."

In *Denison* v. *Denison,* 35 Md. 361, we find this language:

"It is true, the act contains no express prohibition or declaration of absolute nullity of marriages

contracted *per verba de praesenti;* but it is plainly to be perceived that such marriages, if allowed, would contravene the spirit and policy of the act. The implication from the provisions of the act are exceedingly strong against such marriages, and the practice and custom of the people of the state have been so universally in conformity with what would appear to have been the policy and requirements of the law, that such custom has required the force and sanction of law, even though a question could be made as to the technical construction of the act itself.''

The court in *Beverlin* v. *Beverlin,* 29 W. Va. 732 (3 S. E. 36), in commenting on the general rule that marriage at common law will be held good notwithstanding the existence of any statute upon the subject, unless the statute contains express words of nullity, said:

''This rule, however, is not universal. It seems to us, therefore, that when the terms of the statute are such that they cannot be made effective to the extent of giving each and all of them some reasonable operation without interpreting the statute as mandatory, then such interpretation should be given to it.''

This rule of construction is cited with approval in *Offield* v. *Davis,* 100 Va. 250 (40 S. E. 910). After comparing our statutes relative to the subject of marriage with those of Washington, Virginia, West Virginia and Tennessee—states that have rejected common-law marriages—we are of opinion that they are equally mandatory in their provisions. Our statutes concerning marriage, so far as is material to the matter before the court, provide as follows:

Section 9723, Or. L.:

''Marriages may be solemnized by any judicial officer of the state * * or by any minister or priest of any church which is organized and engaged in carrying on its work within this state * * who is

licensed or otherwise authorized by such church to solemnize marriages * * ."

Section 9724, Or. L.:

"In the solemnization of a marriage, no particular form is required, except that the parties thereto shall assent or declare in the presence of the minister, priest, or judicial officer solemnizing the same, and in the presence of at least two attending witnesses, that they take each other to be husband and wife."

Section 9729, Or. L.:

"A marriage solemnized before any person professing to be a minister or priest of any church or congregation of this state, or any judicial officer thereof, is not void, nor shall the validity thereof be in any way affected, on account of any want of power or authority in such person, if such person was acting at the time in the office or the capacity of a person authorized to solemnize marriage, and if such marriage be consummated with the belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage."

Section 9731, Or. L.:

*"Before any person can be joined in marriage they shall procure a license from the county clerk* of the county in which the female resides, directed to any person or religious organization authorized by this act to solemnize marriage and authorizing such person, organization or congregation to join together the persons therein named as husband and wife. * * "

Section 9737, Or. L.:

"That before any county clerk in this state shall issue a marriage license the applicant therefor shall file with the clerk from whom such license is sought, a certificate from a physician duly authorized to practice medicine within the state, made under oath, within ten days from the date of filing the same, showing that the male person thus seeking to enter

the marriage relation is free from contagious or infectious venereal disease.''

Judge DEADY, in 1870, in the case of *Holmes* v. *Holmes,* 1 Sawy. 99 (1 Abb. (U. S.) 525, Fed. Cas. No. 6638), had occasion to construe our statute relative to marriage, and it was held, in this language, to be mandatory:

''Consent to become man and wife—the contract out of which arises the relation—must be given as herein prescribed, before a person authorized to solemnize marriage, and in the presence of two witnesses. Without the observation of these formalities the marriage relation, it seems to me, cannot be created within the states of Oregon and California, particularly the former.''

This case as an authority is much weakened, however, by the holding of the court in *Reed* v. *Harkrader, supra,* which is in direct conflict. *In re Estate of Megginson,* 21 Or. 387 (28 Pac. 388, 14 L. R. A. 540), is frequently cited committing this court as being favorable to the doctrine of common-law marriages; but in that case the court expressly stated that it was not necessary to decide such question. There was a conflict in the testimony as to the authority of the person who solemnized the marriage, and the court very properly held that all presumptions should be indulged in favor of the validity of the marriage and, therefore, upheld the same. Expressions of this court in *Sturgis* v. *Sturgis, supra,* and in *Ollschlager's Estate* v. *Widmer, supra,* may lead to the inference that our statutory provisions relative to marriage are considered merely directory, but the language used must be read in the light of the issues then before the court for decision, and such cases are not controlling here.

We are of opinion that the statutory provisions of this state relative to the manner of contracting marriage have entirely superseded the common-law rule in that respect. We construe our marriage statutes to be mandatory and refuse to give sanction and approval to the doctrine of common-law marriages in this state. To hold otherwise would absolutely defeat the purpose and spirit of all salutary laws which our legislature has enacted on this subject. The public policy of this state concerning the solemnization of marriages has been clearly expressed by statutory enactments, and it ill behooves this court to place a construction upon our statutes that may result in thwarting or defeating such policy. As was said by the court in *Offield* v. *Davis, supra:*

"Were our statute on the subject of doubtful interpretation, we could never give our assent to this doctrine. It is wholly at variance with the ideas of our people as to the requisites of a valid marriage. The question before us involves the best interests of society, the preservation of home and family, the foundation of all society."

The trend of modern authorities is against the recognition of common-law marriages; and it is noteworthy in those states where the courts have given approval to the same, legislation has subsequently been enacted declaring common-law marriages null and void. See Koegel on Common-Law Marriages, in which this tendency is noted. In our opinion the doctrine of common-law marriages is contrary to public policy and public morals. It places a premium upon illicit cohabitation and offers encouragement to the harlot and the adventuress. We do not sanction loose marriages or easy divorces. Good government demands that our laws be obeyed in the solemnization of marriages as in all things else. An

adherence to the law in this regard will tend to cause the parties to look with respect and reverence upon a contract which is the most sacred known to man and which ought not be lightly cast aside. We are convinced that the conclusions herein reached are in keeping with the public policy of this state and will best foster a higher and greater reverence for the marriage relation, which, in fact, is the very foundation upon which our government rests.

8. The contention that the complaint does not state facts sufficient to constitute a cause of suit, and that the court has no jurisdiction to decree an annulment. in the instant case, is untenable. The rule is stated in 9 R. C. L. 487; and in 26 Cyc. 901 it is said:

"A suit for the annulment of a marriage, unlike a suit for divorce, must be founded on some cause which existed at the time of the marriage, not a supervening cause."

At the time of the marriage in question the defendant was in contemplation of law a married woman. As a technical matter of law the plaintiff could have married another person without the necessity of bringing this suit: 9 R. C. L. 267. But courts of equity in the interest of society deem it proper that the invalidity of such marriages be adjudicated and the marital status of the parties be made a matter of record.

The decree of the Circuit Court is reversed, the cross-complaint of defendant dismissed, and a decree entered herein in accordance with the prayer of the plaintiff annulling his marriage with the defendant. Neither party is to recover costs and disbursements in this or the lower court.

REVERSED AND DECREE ENTERED.