PEOPLE v. STEERE.

1. DIVORCE—CONFLICT OF LAWS—HUSBAND AND WIFE—MARRIAGE—CRIMINAL LAW.

In a prosecution for desertion brought against the respondent husband, who had been divorced under the law of the State of Illinois, in which State it was provided by statute that neither party should remarry within one year after the granting of the decree, respondent, who had not acquired a residence in Michigan, and who came to Michigan to avoid the effect of the Illinois statute, should have been discharged by the court upon the trial upon the ground that the second marriage to the complaining witness in the State of Michigan within the prohibited period was unlawful and void notwithstanding the fact that under the law of the State of Michigan the marriage would have been valid, if the parties had acquired a matrimonial domicile.

2. CRIMINAL LAW—ABANDONMENT.

Marriage by a divorced person in violation of the statute of the State in which he had previously had a domicile prohibiting remarriage within the period of one year of the decree of divorce, was invalid wherever celebrated: the incapacity to contract marriage imposed by the policy

of the foreign State to protect the morals and good order of its citizens will be enforced in this State upon grounds of public policy; although the distinction might be made between a marriage that was celebrated in a State or country wherein the parties had acquired a domicile and a marriage outside the State of domicile by a respondent who was endeavoring to evade the effect of the statute.[1]

3. SAME—HUSBAND AND WIFE—INTERNATIONAL LAW.

If the respondent had obtained a valid domicile in the State of Michigan at the time of his second marriage, its validity would have been beyond question even in the State of original domicile in the event of the respondent's returning to live there; but testimony that the second wife acted in good faith, and later returned to Michigan where respondent visited her twice, did not validate the ceremony.

4. SAME—COMITY.

There appears to be no rule of interstate comity that requires courts of the State of Michigan to enforce the prohibition of another State against remarriage within a stated period following a decree of divorce.

5. SAME—ABANDONMENT—CRIMINAL LAW.

Neither party having acquired a domicile in the State of Michigan, there was no abandonment of the complaining witness by her husband within the meaning of Act No. 144, Pub. Acts 1907 (4 How. Stat. [2d Ed.] § 11539).

Error to Cass; Des Voignes, J. Submitted January 21, 1915. (Docket No. 129.) Decided March 17, 1915.

Clarence E. Steere was convicted of deserting his wife. Reversed; respondent discharged.

*Grant Fellows,* Attorney General, and *Asa K. Hayden,* Prosecuting Attorney, for the people.

*C. M. Lyle,* for respondent.

---

[1] For the laws governing the validity of a marriage, generally, see notes in 57 L. R. A. 155; 11 L. R. A. (N. S.) 1082; 17 L. R. A. (N. S.) 800; 26 L. R. A. (N. S.) 179; 28 L. R. A. (N. S.) 753, and 43 L. R. A. (N. S.) 355.

In September, 1914, respondent, who had been brought from the State of Illinois in extradition proceedings, was informed against, charged with deserting and abandoning his wife on October 13, 1913, at Mason township, Cass county, Mich., without providing necessary and proper shelter, food, care, and clothing for her. Being arraigned, he stood mute, and upon a trial was convicted and sentenced to pay his said wife $15 a month, and to execute a bond to secure such payment. He complains of various rulings of the trial court; the principal errors alleged being the refusal to direct a verdict in his favor and to give his requests to charge. Two principal questions are presented; one that the testimony does not prove abandonment of his wife; the other that he is not her husband. The facts are not disputed. It appears that respondent is a citizen of Illinois, domiciled at Chicago since 1896. In 1904 (December 13th), he married there Mona L. Rothe. In January, 1913, his said wife applied for and was granted (April 2, 1913) a divorce on the ground of cruelty, the decree specifying:

"But neither party shall marry again within the time forbidden by statute, unless they remarry each other."

The statute of Illinois provides, the cause for divorce being as stated, that neither divorced party shall marry again within one year after the granting of the decree, and that, if they do, the marriage so contracted shall be absolutely void, unless they remarry each other. The supreme court of that State has ruled that:

"A marriage contracted in disregard of the prohibition of the statute, wherever celebrated, will be void." *Wilson* v. *Cook*, 256 Ill. 460, 100 N. E. 222, 43 L. R. A. (N. S.) 365; Hurd's Rev. St. (1911) c. 40, § 1a.

Respondent and Shirley Ross (who knew that he

was a divorced man, and was informed by him that his divorce had been granted in November, 1911) were married at St. Joseph, Mich., June 2, 1913. They were in St. Joseph four hours, returned to Chicago the same day, and lived there as husband and wife until July 19, 1913. On the last-mentioned day Shirley went to Cass county, Mich., to the home of her father, being ill, and respondent visited her there twice, staying a couple of days each time. The last time was October 13, 1913. Shirley expected to go back to Chicago until May 9, 1914. Her father was resident in Chicago until the spring of the year 1913. She testified:

"I came out here for the purpose of getting well and recuperating, and then expected to go back shortly, but he wouldn't allow me.

"*Q.* How long did you continue to intend to return to your husband in Chicago, Illinois?

"*A.* I intended to until when I went up there in May, 1914. * * *

"*Q.* You considered your home in Chicago up until that time with your husband?

"*A.* Yes."

The first, and divorced, wife began, or threatened to begin, proceedings to annul the decree of divorce. She threatened to have respondent arrested for his second marriage unless he remarried her. Respondent thereupon remarried his first wife October 6, 1913, the ceremony being performed by the judge who had granted the divorce.

Shirley visited respondent in Chicago September 20, 1913, remaining four days, staying with respondent at a hotel on September 23d. She again saw him in Chicago November 18, 1913, and May 9, 1914. On these occasions he refused to have anything to do with her, telling her he was in trouble, that she would be better off at home with her people, who could support her, which he said he could not do. She learned in June, 1914, that he remarried his first wife, and had

him arrested, charged with committing adultery. What became of that proceeding is not disclosed.

The trial court, considering the statute (Act No. 144, Pub. Acts 1907) and the opinion of this court in *Re Price*, 168 Mich. 527 (134 N. W. 721, Am. & Eng. Ann. Cas. 1913C, 594), ruled that it had jurisdiction, declined to instruct the jury that respondent's marriage with Shirley was void, and submitted to the jury whether the wife (Shirely) was a party to defendant's confessed purpose and attempt to avoid the law of Illinois and the condition of the decree by a marriage outside of that State, making her good faith an element necessary to be established in order to convict respondent.

OSTRANDER, J. (*after stating the facts*). Something is claimed by the people on account of the fact that Shirley Ross came to Michigan by the consent of respondent, was here visited by him, and was here when, upon the development to her of the real situation, he refused to further provide for her. In essence, however, the contention of the people is, and must be, that respondent must be considered to be the husband of Shirley Ross because the ceremony of marriage was performed in Michigan with due formality.

Excepted from the general rule that a marriage, valid according to the law of the State or country where it is celebrated, is valid everywhere, are marriages prohibited from motives of public policy by the public law of the State or country in which they are questioned. The supreme court of Illinois, in the decision already referred to, after a citation of authorities, said:

"These cases sustain the principle that, where a State has enacted a statute lawfully imposing upon its citizens an incapacity to contract marriage by reason of a positive policy of the State for the protection of the morals and good order of society against serious

social evils, a marriage contracted in disregard of the prohibition of the statute, wherever celebrated, will be void."

This is in keeping with numerous decisions in other jurisdictions, in which a similar policy is evidenced by statute. See *Lanham* v. *Lanham*, 136 Wis. 360 (117 N. W. 787, 17 L. R. A. (N. S.) 804, 128 Am. St. Rep. 1085), and cases collected in the opinion. In the application of the general rule, and the exception, a distinction may be made, and it has been made, between the marriage of persons celebrated in a State or country in which they have acquired a domicile and the marriage, outside the country of the prohibition, of persons domiciled within it; persons who are married elsewhere to escape the effect of the prohibition. Such a case is *State* v. *Fenn*, 47 Wash. 561 (92 Pac. 417, 17 L. R. A. [N. S.] 800).

Assuming the indicated position of the courts to be correct in principle, what is the status of persons thus violating the law of their domicile in other States in which the validity of the marriage is brought in question, and, to be more precise, what is their status under such circumstances in States in which a public policy similar to that of the State of the domicile of the parties has not been declared by statute? In the State of Michigan the court granting a decree of divorce may provide in the decree that the party against whom any divorce is granted shall not marry again, etc., and, if a marriage is celebrated contrary to the decree, the guilty person "shall be deemed to have committed the crime of bigamy and shall be subject to the pains and penalties therefor."

The rule that statutes of a State have, generally, no extraterritorial effect is familiar. If respondent and Shirley Ross had intended to acquire, and had acquired, a domicile in Michigan before or at the time the Michigan marriage was celebrated, the validity of

the marriage could not be here successfully questioned; upon the authority of *State* v. *Fenn, supra,* it could not be successfully questioned in Illinois if, later on, they returned to that State to live. This being true, it must also be true that no personal disability to contract marriage in another State attended respondent. No impediment to such a marriage, save that interposed by the Illinois law, existed. Whatever public policy is evidenced by the Michigan law, it is directed rather to the controlling of the party guilty of marital wrongs than, generally, at parties to a divorce proceeding. +There appears to be no rule of State comity which requires the courts of this State to recognize and to enforce here the prohibition of the Illinois law, and no such rule is suggested. Nevertheless I must hold that respondent has not abandoned his wife in Michigan. He never acquired a domicile in this State. This State is not the matrimonial domicile of respondent and Shirley Ross, nor was it ever intended to be. Shirley Ross acquired no domicile here through respondent or her relation to him. The case is one of first impression, but I think it impossible to defend the proposition that because the marriage ceremony was performed in this State she can claim here to be wife of respondent; that by mere removing of herself from her matrimonial domicile, in which she is no wife, she becomes, the State line being crossed, an abandoned wife in Michigan.

An argument may be made, reaching the same conclusion, based upon the proper construction and application of the statute under which respondent is charged. It is true, as was said by the learned trial judge, that it applies in terms to any person who deserts and abandons his wife. It is entitled:

"An act to prevent the desertion and abandonment of wife; * * * to make such abandonment and desertion a felony and to prescribe the punishment

therefor; to provide for the care of the dependent wife and children. * * * "

It would not be contended that, if a wife from another State, where was the matrimonial domicile, removed herself to Michigan and claimed here to have been thereafter abandoned by a husband who had not changed his domicile, the husband would be amenable to the statute, although a husband, domiciled here, who flees the State, abandoning and intending to abandon his wife remaining here, may undoubtedly be brought to book.

Decision that the conviction should be set aside and respondent discharged is based solely upon the ground that Shirley Ross does not occupy in this State the position of an abandoned wife; the people of the State being therefore not concerned.

BROOKE, C. J., and McALVAY, KUHN, STONE, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.