[No. 4162. Decided March 25, 1902.]

SPOKANE CO-OPERATIVE MINING COMPANY, *Appellant*, v.

H. J. PEARSON, *Respondent*.

JUDGMENTS — EQUITABLE RELIEF — FAILURE TO DEFEND IN ORIGINAL ACTION.

Although judgment by default has been taken against defendant in an action to which he has a good defense on the ground of fraud, yet equity will not interfere by injunction to restrain the judgment creditor from availing himself of such judgment, where the party who seeks the aid of equity had failed to make a proper defense at law through his own negligence.

SAME — RIGHT TO JURY TRIAL.

An action to enjoin defendant from enforcing a judgment against plaintiff being an independent suit for equitable relief and not an application under Bal. Code, §§ 5153-5162, for a retrial in the original action, neither party is entitled to demand a jury trial.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*Shine & Winfree*, and *Happy & Hindman*, for appellant.

*Merritt & Merritt,* for respondent.

The opinion of the court was delivered by

WHITE, J.—In the year 1900 the respondent herein commenced an action against the appellant in the superior court of the state of Washington, in and for Spokane county, to recover · judgment against it for the amount specified in the complaint. The appellant· did not appear in said action, and on the 22d day of September, 1900, judgment was rendered against it for the sum of $385.22, together with costs. Prior to June 29, 1901, appellant commenced this action against the respondent. The· matters alleged will more fully appear by the amended complaint, which, omitting the caption, is as follows:

"Plaintiff, for cause of action against the above-named defendant, and by way of amended complaint, complains and alleges:

"1.   That plaintiff herein is, and was at all the times hereinafter alleged, a corporation, organized and existing under and by virtue of the laws of the state of Washington, with its principal office and place of business in the city of Spokane.

"2.   That, at all the times in this amended complaint mentioned, the plaintiff herein was owner of and in possession of ·a certain mining property, known as the "Gold Boy' group of mining claims, situate in Baker county, state of Oregon.

"3.   That, during all the times in this amended complaint mentioned, none of the members of this corporation, or any of the stockholders, were ever at said mine during its operation, as hereinafter mentioned, or at any other time, or knew anything about its value, excepting as represented to it by this defendant.

"4.   That on or about the 23d day of June, 1899, the defendant herein, H. J. Pearson, entered into a written contract with this plaintiff, by the terms of which said Pearson agreed to construct a tunnel on the said 'Gold

Boy' group of mining claims, as above mentioned, for a distance of one hundred and twenty feet, by the terms of which the said defendant agreed thereby to furnish all timber, material, and tools, and to perform the said work for the sum of seven and 50-100 dollars per running foot.

"5.    That the plaintiff herein, long prior to the institution of the action against it by this defendant, as hereinafter alleged, fully paid to the defendant, all sums that were due and owing to him under and by virtue of said contract for work done thereunder, and fully paid to him all sums then and now due by virtue of any work or services performed by defendant for this plaintiff.

"6.    That in the month of September, 1899, and while said defendant was employed by this plaintiff, as its agent and servant, to perform said work as above mentioned, the said defendant reported to this plaintiff that it was impossible for him to continue the work as contracted by him, as the character of the rock through which said tunnel was being cut had changed into a hard, gold-bearing quartz, of such increased hardness that said work could not be continued therein at the said contract price,—seven and 50-100 dollars per running foot.

"7.    That the report so made by said defendant as to the changed character of said rock was false and untrue, and known to be so by said defendant, and that said report was made by said defendant to this plaintiff, with the design and purpose of inducing this plaintiff to pay defendant a greater price for said work.

"8.    That for the purpose of carrying out said design to cheat and defraud this plaintiff, and to make it appear to this plaintiff that defendant's aforesaid report was true, and to induce plaintiff to pay defendant a greater price for said work, defendant 'salted' the quartz taken out of said tunnel, by crushing therewith a quantity of rich, hard, gold-bearing quartz brought by said defendant from Republic, state of Washington, and, in further carrying out said fraudulent design, defendant delivered said 'salted' samples to this plaintiff to be assayed; representing said samples as coming from plaintiff's said mine,

and that said samples truly represented the character and richness of the rock in said mine. The plaintiff had said samples assayed, and believing, from said assays and by virtue of said fraud practiced upon it, that defendant's aforesaid representations were true, and that said mine was of great value, and having confidence in the truth and fidelity of said defendant, agreed to continue said defendant in its employ, and was thereby influenced to agree to pay said defendant the sum of twenty dollars per running foot for all work thereafter done in constructing said tunnel.

"9. That plaintiff herein had no knowledge or means of knowing said fraud so practiced upon it, and could not by reasonable diligence have ascertained the same. That the defendant, in the month of September, 1899, was, and prior thereto had been, a stockholder in said corporation. That plaintiff knew the defendant to be a competent and experienced miner and thoroughly familiar with the character and value of said mine. That all of the stockholders, trustees, and officers of this plaintiff have at all times resided at or near Spokane, Washington, and were and are engaged in mercantile and professional pursuits, other than mining, and that they, nor any of them, had any knowledge whatever as to the manner or as to the character or value of mining property, and in particular as to plaintiff's said mining property, described in paragraph 2 of this amended complaint. That this plaintiff, nor any of its stockholders, trustees, or officers, by personal examination of said mining property, could have ascertained the truth or falsity of defendant's said report and representations. That by reason of defendant's aforesaid knowledge and experience, of his familiarity with plaintiff's said mine, and of the confidence and trust reposed in him by this plaintiff, by further reason of this plaintiff's total want of knowledge and experience in relation to mining properties, plaintiff was compelled to and did rely solely upon said defendant's representations for its information and guidance in relation thereto.

"10. That defendant at all times knew that plaintiff possessed no knowledge of the character or value of min-

ing property. That it, nor any of its stockholders, trustees, or officers, had ever seen the property described in paragraph two of this amended complaint, and that defendant knew that this plaintiff believed him to be a competent miner, and that it had explicit confidence in defendant's truth and fidelity, and that it would and did believe as true the false and fraudulent representations made by defendant to this plaintiff as aforesaid.

"11. That thereafter, towit, on the 17th day of March, 1900, in carrying out his fraudulent purpose and design to cheat and defraud this plaintiff as above mentioned, the said defendant herein fraudulently represented that the plaintiff herein was indebted to him in the sum of three hundred and twenty-two and 50-100 dollars, and thereby fraudulently procured from this plaintiff two warrants,—one for one hundred sixteen and 10-100 dollars, being No. 216, and one for two hundred six and 40-100 dollars, being No. 217. That said warrants so obtained from this plaintiff by defendant were obtained for services alleged to have been rendered and performed by the defendant after the fraudulent acts hereinabove mentioned.

"12. That thereafter, the defendant herein commenced an action against this plaintiff in the superior court of the state of Washington, in and for Spokane county, to recover judgment against it for said pretended services so fraudulently represented to have been performed, and alleged in his complaint, among other things, that plaintiff was indebted to him in the sum of three hundred thirty-five and 20-100 dollars, with interest from March 22, 1900, for work, labor, and services, alleged to have been performed by him for plaintiff; and thereafter on the 22d day of September, 1900, defendant herein recovered a pretended default judgment in said court against this plaintiff, in words and figures as follows, towit:

" 'This cause coming on regularly for hearing this 22d day of September, 1900, Mount & Merritt appearing for plaintiff and defendant not appearing, and it appearing to the court that an order of default has been heretofore regularly and duly entered herein against said defendant,

and the court after hearing the evidence and being sufficiently advised in the premises, it is therefore ordered and adjudged that said plaintiff, H. J. Pearson, do have and recover of and from said defendant, Spokane Cooperative Mining Company, judgment in the sum of $385.22, together with his costs and charges in this behalf laid out and expended, taxed at $......, and that execution issue therefor.

Done in open court this 22d day of September, 1900.

LEANDER H. PRATHER, Judge.'

"13. That all the work referred to in the complaint upon which said pretended judgment was based was rendered and done by the said defendant after the said fraud and deception was perpetrated by him against this plaintiff as above mentioned.

"14. That after the entry of the judgment described in paragraph 12 of this amended complaint, and a short time prior to the commencement of this action, the defendant admitted and confessed to this plaintiff the false and fraudulent character of his acts and representations made to this plaintiff as hereinbefore alleged; and that prior to said admissions by defendant, plaintiff had no knowledge or means of knowing said fraudulent character of said acts and representations.

"15. That Warrant No. 216, which was drawn by the plaintiff herein for the sum of $116.10, was fraudulently forged and raised by some persons unknown to this plaintiff, and while in the possession of the defendant here, to the sum of $167.60, all of which facts were unknown to this plaintiff until a short time before the commencement of this action.

"Wherefore plaintiff prays that the defendant be perpetually restrained and enjoined from in any manner enforcing said judgment, and from exercising any rights thereunder against the plaintiff herein, and for its costs and disbursements expended in this suit, and for such other relief as to the court may appear equitable and proper in the premises."

Respondent filed a general demurrer to said amended complaint, which was by the court sustained; and, appellant refusing to plead further, the court entered judgment dismissing its complaint, and for costs, to which ruling appellant duly excepted. This ruling and the entering of judgment for costs in favor of respondent are assigned as error.

The appellant contends that courts of equity are not bound by any hard and fast rules; that, whenever it is inequitable and unjust that a party should enforce a judgment obtained in a court of law, courts of equity will stretch out their administering hands and prevent the execution of any judgment tainted with fraud. The principal contention of the respondent is that, before a court of equity will vacate a judgment at law, it must be made to appear that fraud was practiced in the very act of obtaining the judgment, and not merely in the cause of action on which the judgment is founded, and which could have been interposed as a defense, unless its interposition as a defense was prevented by the adverse party. There are cases going to the extent urged by the respondent, the principal one being *United States v. Throckmorton,* 98 U. S. 61. See, also, *Camp v. Ward,* 69 Vt. 286 (60 Am. St. Rep. 929, 37 Atl. 747), and *Bates v. Hamilton,* 144 Mo. 1 (66 Am. St. Rep. 407, 45 S. W. 641). We are not, however, called upon to go to this extent in determining the question before us in the present case. The rule is universal that, where a party has failed to make a proper defense at law through his own negligence, equity will not aid him. *Hungerford v. Sigerson,* 20 How. 156. He must have been prevented from availing himself of the defense by fraud or accident, *unmixed with any fault or negligence in himself or his agents,* before a court of equity is authorized to interfere by injunction to restrain

the adverse party from availing himself of such judgment. *Truly v. Wanzer,* 5 How. 141.   It is not sufficient to show that injustice has been done, but it must appear also that it was not occasioned by the inattention of the party complaining.   He must show that he has been guilty of no laches, and that he has done everything that could reasonably be required of him to render his defense effectual at law.   A suit of this character is watched by equity with extreme jealousy.   *Slack v. Wood,* 9 Grat. 40.   It is not sufficient that the defendant did not know of the grounds of defense at the time of the trial.   It must appear that he could not have obtained such knowledge by the use of ordinary diligence.   If the same sources of information were open to him as well before as since the trial, and the same measure of diligence exercised   before   the   trial would have been as effective in advising him of his defense as that which he exerted afterwards, he cannot complain. *Miller v. Gaskins,* 1 Smedes & M. Ch. 524.   Says RED-FIELD, J., in *Emerson v. Udall,* 13 Vt. 477 (37 Am. Dec. 604):

".    .    .    it is now, I apprehend, well settled, that a court of equity will not examine into the foundation of the judgment of a court of law, upon any ground, which *either was tried, or might have been tried,* in the court of law.   The judgment of a court of law is conclusive upon all the world, as to all matters within its cognizance.   If a party fail there by not presenting his defense, when he should have done it, and, *but for his own neglect,* would have done it, he can have no redress in a court of equity ;    .    .    ."

The rule announced by Judge STORY is:

"In regard to injunctions after a judgment at law it may be stated as a general principle that any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed

himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, *unmixed with any fault or negligence in himself or his agents,* will authorize a court of equity to interfere by injunction, to restrain the adverse party from availing himself of such judgment. Bills of this sort are usually called bills for a new trial." 2 Story, Equity (13th ed.), §§ 887, 1577.

See, also, 3 Pomeroy, Equity Jurisprudence, § 1361, and note; *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332; *Holmes v. Stateler,* 57 Ill. 209; *Gorsuch v. Thomas,* 57 Md. 334; *Champion v. Miller,* 2 Jones Eq. 194; *Hendrickson v. Hinckley,* 17 How. 443; *Embry v. Palmer,* 107 U. S. 3, 19 (2 Sup. Ct. 25); *Zellerbach v. Allenberg,* 67 Cal. 296 (7 Pac. 908).

In the case under consideration the appellant asks the aid of a court of equity to relieve it from a judgment on account of a defense which could have been set up in the original action, and appellant was not prevented by the act of respondent or by any pure or unmixed accident from making such defense. In paragraph 15 of the complaint it is alleged that the warrant on which the original action is in part founded was raised from $116.10 to $167.60. An examination of the books of the corporation when the suit was brought would have disclosed this fact. There is nothing in the complaint showing why this was not done, and no excuse is given for this neglect. Ignorance of the facts constituting the defense does not excuse the omission to make it unless it be shown that the information could not have been obtained by the care and attention necessary in preparing a case for trial, and which one is bound to exercise when sued. There is no allegation in the complaint of any confidential relationship existing between the respondent and the appellant when the action was brought, under which the appellant had a right to

rely upon the representations of the respondent.    The
mere fact that the respondent was a stockholder in the
corporation in September, 1899, when he falsely and
fraudulently represented that the rock in the tunnel had
changed its character so as to become a hard and gold-
bearing quartz, and thereby induced the appellant to
change the contract theretofore entered into with him from
$7.50 per running foot to $20 per running foot for driv-
ing the tunnel, was not in itself an excuse for allowing
the respondent to take judgment by default, after the work
was done, on warrants issued for this work on the 17th of
March, 1900.    It was the duty of the officers of the cor-
poration to look after its management and the charac-
ter of the services rendered to it, and they were required to
see that the work it had in hand was properly performed,
and they were charged with examining such work from
time to time.    From September, 1899, until September
22, 1900, when the judgment was obtained which the ap-
pellant now seeks to enjoin, the way and opportunity were
open for the investigation of the work performed by the
respondent.    If investigated, the fraud complained of
would have been discovered.    No excuse is shown why
there was not an investigation.    It is manifest that the
appellant could have obtained, after the suit was brought,
knowledge of the alleged fraud, by the use of ordinary
diligence.    The same source of information, towit, an ex-
amination of the work, was open to it as well before as
after the judgment was rendered; and, if diligence and
care had been exercised before the judgment was rendered,
there would have been no necessity for this action.    It was
through the negligence of the appellant and its agent in
not investigating the demands of the respondent that
judgment was taken against it.    Equity will not grant
relief under such circumstances.    The court below was

therefore right in sustaining the demurrer to the complaint. This is an independent suit for equitable relief, and calls for a determination of the questions involved without the intervention of a jury. It is not an application, under §§ 5153 to 5162, Bal. Code, for a re-trial in the same action.

The judgment of the court below is affirmed, with costs.

REAVIS, C. J., and ANDERS, HADLEY, FULLERTON and DUNBAR, JJ., concur.

MOUNT, J., not sitting.