[No. 11784. Department One. July 22, 1914.]

ATHELTON U. HERRETT, *Appellant*, v. ALICE HERRETT, *Respondent*.[1]

DIVORCE — CUSTODY OF CHILDREN — DECREE — MODIFICATION—EVIDENCE—SUFFICIENCY. The modification of a decree of divorce so that the defendant, who had remarried, should not be allowed to visit or entertain his children in the presence of his wife, is error, where the only evidence to warrant it was that the wife had given each of the children a new penny and baked cookies and a birthday cake for them, and there were no aspersions against her character or home.

SAME—CUSTODY OF CHILDREN — DECREE — VIOLATION. A divorced wife violates the spirit of the decree permitting the children to visit the father, where she prejudiced them against him because of his remarriage; and should be required to cease doing so.

DIVORCE—ALIMONY—ALLOWANCE. The allowance of alimony where the right is established, should be measured by the necessities of the parties.

SAME—ALIMONY—MODIFICATION — EVIDENCE — SUFFICIENCY. The evidence is insufficient to warrant the increase of a $75 monthly payment of alimony, where it appears that the defendant had paid alimony due, furnished plaintiff with free house rent and groceries, that his business had decreased since the divorce, and he had remarried, and a salary of $100 a month had been increased to only $125 a month.

SAME—ALIMONY—DECREE—VALUE OF PROPERTY — CONCLUSIVENESS. In a divorce action, a finding as to the value of the property is not conclusive upon a subsequent motion to modify the decree for alimony.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered July 8, 1913, upon findings

[1]Reported in 141 Pac. 1158.

in favor of the defendant, modifying a decree of divorce, after a hearing on the merits. Reversed.

*Moore, Wardall, Wardall & Martin,* for appellant.

*Henry W. Pennock,* for respondent.

CHADWICK, J.—This case has been before this court, and is reported in 60 Wash. 607, 111 Pac. 867. The decree formerly entered provided that the children of the parties should be allowed to visit the father at stated intervals, and that the father should have the right to the sole care and custody of the children for a period of one month in the summer time. In the fall of 1912, the father remarried. After the children had visited the father once or twice in his home and his place of business, the mother refused to allow them to visit him any more unless he would agree to entertain them away from his home and out of the presence of his wife. When the time came for the father to take the children for the summer, the respondent positively refused to allow him to have the children unless he would agree with her that he would not allow them to meet his present wife. He thereupon asked that the respondent be cited for contempt. This was met by a countermovement on the part of the respondent, who filed a motion asking for an increased allowance of alimony. The two motions or rules coming on for hearing at the same time, the court found, after taking the evidence of the parties, that the conditions had so changed that a modification of the former decree was warranted, as it had been provided therein that it might be, from time to time, as the court might find it necessary so to do. The court found that hereafter said children "may not be entertained by or in the presence or company of the plaintiff's present wife," and further found, in so far as the original decree refers to the summer vacation, that it should be qualified with the following proviso: "provided the present wife of the plaintiff shall not be in the company of said children nor entertain them during any part of said period." The

original decree was further modified by increasing the allow-
ance of alimony from $75 to $90 per month.

The only evidence, if it can be said that the testimony
rises to the dignity of evidence, warranting a modification of
the decree, in so far as it pertains to the children, is that
the present wife, on one occasion, gave two of the smaller
children each a bright new penny, and that she baked some
cookies which were given to them, either by her or by her
husband, and had also baked a birthday cake for one of the
little ones. This so offended respondent that she sought the
advice of her former counsel, who told her that she "did not
have to stand it." It was then that she refused to allow the
children to visit the father.

The present wife is a woman of good character; at one
time she had been employed in the home of the parties to this
action. There is not one word of aspersion against her char-
acter or against the home she maintains. Indeed, it seems to
us that the things she did were no more than the performance
of a duty she owed to her husband and to his children. We
find no disposition or purpose to wean the affection of the
children away from the respondent. It is not contended that
she has ever, at any time, by word or act, sought to violate
any rule of propriety or the legal rights of the parties con-
cerned. The respondent at all times thought well of appel-
lant's present wife while she was employed in their home.
She was, according to her own testimony, the best girl she
ever had. There is no suggestion in the record that she was
instrumental in bringing about the trouble culminating in the
divorce, or that she kept company in any way with appellant
until a short time before their marriage. So far as the
record goes, the present wife was just human. Had she
been otherwise, respondent might have cause to complain.
In contrast with the wife's conduct, it is very apparent to us
that the respondent has not kept proper faith with her hus-
band, who, notwithstanding the troubles they may have had,
has an equal interest, and, so far as the record shows, an equal

affection for the children. One of the little ones was a witness, and the instillation of prejudice is very apparent from her testimony.

"Q. You used to be very fond of your papa? A. Yes, sir. Q. Would you say that you have treated your papa with the same affection during these last six months or year that you formerly did? A. No, I don't. Q. Why should you treat your father differently? A. He went and ruined my mother and he married another lady. Q. That is the reason you don't love your papa? A. Yes, sir."

Respondent, testifying, says that one of the smaller children had told her that he would never have eaten the cookies, "if he had known they came from her" (meaning the present wife). Such sentiments, if they were expressed by the child, who was of tender years, were not spontaneous or the natural expression of a child. Respondent has violated the spirit of the decree, for whatever her grievances may be, the children are as much entitled to love and be loved by the father as by the mother.

To hold, under the facts of this case, that a parent is to be deprived of the society of his children, would be to hold that divorced people cannot remarry. Whatever individual opinion may be with reference to this vexed problem, our law is framed upon the theory that marriage is to be encouraged, and that remarriage is not only lawful but is consistent with a sound public policy.

In so far as the court has modified the former decree touching the right of visitation, the judgment will be reversed, with direction to the court to direct the appellant to cease her manifest purpose to turn the children against the father and against his unoffending wife. Coming now to the question of the increase of alimony, appellant undertook to show that his business was in such shape that the increase was an unwarranted hardship. He offered testimony that, in our judgment, might well have been considered by the court. When husband and wife have come to the divorce court and meas-

ured their shattered bonds in money, the law will not longer treat the relation as one of sentiment. It must be measured by the necessities of the one party and the ability of the other to meet that necessity (*Holcomb v. Holcomb*, 53 Wash. 611, 102 Pac. 653); assuming, of course, that the one receiving the alimony is entitled to demand it, under all the attending facts and circumstances.

We think, too, that the court was in error when it directed the payment of a greater sum than $75 per month. The testimony shows that appellant's business was in a bad way; that he had had to give up one of his places of business and had combined his business with that of his brother. It shows that he has paid the $75 per month to his former wife; that he has furnished her with all her provisions and that she had her house rent free. This testimony is uncontradicted. In fact, an offer to prove the present condition of his business by the books of the company he is connected with was rejected upon the objection of respondent's counsel. The only ground upon which the order for the increased amount can be sustained is that, at the time the divorce was entered, the appellant said he would be willing to pay more alimony if he were able to do so, and it appears by the record that he is receiving at this time a salary of $125 a month instead of $100, the amount he received at the time the former decree was entered. Now, if there is no reason in the law, there is no reason for the law's existence. If respondent, under the circumstances, cannot live on $75 a month, with free house rent and provisions in the way of fruit and vegetables and other commodities handled by commission houses, then it is certain that appellant and his present wife cannot live on $35 per month, out of which house rent must be paid. The testimony shows, and it is uncontradicted, that they are living in a most modest way.

It may be said that the case falls within the rule of *State ex rel. Brown v. Brown*, 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974, and that a husband is bound to pay alimony to a

former wife, notwithstanding the fact that he has remarried. We do not doubt this proposition, but this court has never intended to go so far as to hold that a divorced man or woman has no right to remarry, or that, if he does, all his earnings must go to the first wife. The *Brown* case does not deny the right of the court to measure the several obligations of the husband in a direct proceeding.

The law recognizes marriage as a civil contract founded on public policy, and encourages it in the interest of morality. If, then, a divorced husband remarries, he owes a duty to his present wife as well as to the former relation that the law must recognize if it is consistent. While the first wife may have first consideration and her necessities will not be unreasonably curtailed, or her wants ignored, neither will the necessities or wants of the second wife be disregarded. The court should and will make such adjustment as the relative necessities of the parties demand and the ability of the husband will warrant. From the record before us, the former order is more consistent with right and reason than is the one appealed from.

Our attention is called to the former opinion of this court wherein it is said that the testimony shows that the property of the parties to that action was worth $30,000. The testimony before us does not show any such value. Such findings are not conclusive, and courts will, from time to time, adjust orders of this kind to meet present circumstances. *Croft v. Croft*, 77 Wash. 620, 138 Pac. 6; 14 Cyc. 786.

The orders of the lower court are reversed. The case is remanded with directions to reinstate the former decree.

GOSE, MAIN, and ELLIS, JJ., concur.