[No. C. D. 1178. *En Banc.* April 4, 1929.]

*In the Matter of the Proceedings for the Disbarment of* WALTER G. KIENSTRA.[1]

Charles E. Claypool and Walter G. Kienstra, for accused.

The Attorney General and L. B. Donley, Assistant, for the state.

PARKER, J.—Kienstra, whom, by this proceeding, it was sought to disbar, or otherwise discipline, as an attorney at law, was duly admitted to the bar of this state, as an attorney at law, in the year 1900. At all times since then, he has been such attorney, maintaining his residence in Seattle, in this state. Mrs. Williams has been, at all times since the year 1919, main-

[1]Reported in 276 Pac. 294.

taining her residence in Seattle, in this state. On January 12, 1921, Kienstra, acting as attorney for Mrs. Williams, procured, in the superior court for King county, a decree of divorce for her from her husband, who was then, and has been at all times, a nonresident of this state, the decree being rendered by default, upon due constructive service of summons and complaint, as prescribed by our divorce statute. The validity of the decree of divorce is not questioned. It was prepared by Kienstra, and, in compliance with our then divorce statute, contained an express provision forbidding remarriage of Mrs. Williams to a third party within six months from the date of its entry.

Thereafter, and evidently before that time, Kienstra and Mrs. Williams contemplated marriage to each other. Kienstra then persuaded Mrs. Williams to go with him to British Columbia and submit to a formal marriage ceremony with him, which ceremony was performed on January 15, 1921, only three days following the entry of the decree of divorce from her husband. Kienstra and Mrs. Williams did not go to British Columbia with any intent to become residents there, or with any intent to change their residence from Seattle, in this state. Very soon after the performance of their marriage ceremony in British Columbia, they returned to Seattle, and have continued, ever since, to reside there. Before they went to British Columbia with a view of being married there, Mrs. Williams made some objection to having the marriage ceremony performed so soon after the entry of the divorce decree, suggesting to Kienstra that there might be some legal objection to their marriage within a period of six months following the entry of the divorce decree, though she seems not to have had any clear idea as to the illegality of their marriage outside this state

during that period. Kienstra then assured her, in substance, that their immediate marriage in British Columbia, outside this state, would not be unlawful other than in a mere technical sense, assuring her that, in any event, such marriage could be cured by their going through a formal marriage ceremony after the expiration of the six months' prohibitory period. She, having confidence in his superior knowledge touching that question, yielded to their going immediately to British Columbia and having the marriage ceremony performed there.

Thereafter Kienstra and Mrs. Williams lived together as man and wife in Seattle until some time in 1923, and thereafter in the same house, but probably not as man and wife, until 1925. In the meantime, she remained somewhat uncertain in mind as to the lawfulness of their marriage ceremony performed in British Columbia, and insisted that they be lawfully married after the expiration of the six months' prohibitory period. This he seemed, for a time, to have tentatively agreed to, but kept putting her off, and they never were so joined in marriage. Differences arose between them in 1923, causing their separation. He had, in the meantime, been entrusted with most of her business affairs, she having property and funds of considerable value. By his management of her affairs, she suffered loss of a large portion of her funds and property. This, it is claimed, was largely the result of his fraudulent acts against her, rather than the result of mere mistaken judgment on his part. He claims that such losses were not the result of his fraudulent acts, and that her losses have been, in a large measure, restored to her.

In due course, a hearing touching the question of Kienstra's disbarment was had before the state board of law examiners, resulting in their conclusion and

recommendation that he be disbarred; apparently, their conclusion was rested particularly upon his unprofessional conduct in connection with his pretended marriage to Mrs. Williams within the six months' prohibitory period; his neglect to lawfully marry her after the expiration of the six months' prohibitory period, as requested by her; and his inducing her to continue to live with him as his lawful wife for some two years after the entry of the divorce decree. The board of law examiners seems also to have been influenced, in reaching their conclusions, in some measure, by their view of Kienstra's dealings with Mrs. Williams' property, though this seems to have been regarded by the board as a minor consideration.

■ Our divorce statute, in force at the time of the entry of the decree divorcing Mrs. Williams from her husband and until the enactment of ch. 109, Laws of 1921, p. 331 (Rem. Comp. Stat., § 982), providing for withholding final decrees of divorce for a period of six months after entry of an interlocutory decree, was chapter XCIV, Laws of 1893, p. 225, reading in part as follows:

"Section 1. It shall be unlawful for any divorced person to intermarry with any third person within six months from the date of the entry of the judgment or decree granting the divorce, . . . All marriages contracted in violation of the provisions of this section, whether contracted within or without this state, shall be void."

This provision of the then existing statute had, at the time of the entering of the decree of divorce, been given full force and effect strictly in accordance with its plain language, as to marriage of residents of this state after their divorce, by the following decisions of this court: *State v. Fenn*, 47 Wash. 561, 92 Pac. 417, 17 L. R. A. (N. S.) 800; *Pierce v. Pierce*, 58 Wash. 622, 109 Pac. 45; *Peerless Pacific Co. v. Burckhard,*

90 Wash. 221, 155 Pac. 1037, Ann. Cas. 1918B 247, L. R. A. 1917C 353; *Knoll v. Knoll,* 104 Wash. 110, 176 Pac. 22, 11 A. L. R. 1391. Kienstra and Mrs. Williams being residents of this state, with no intention of changing such residence at the time they went to British Columbia, their marriage ceremony there, three days following the entry of her decree of divorce, rendered that marriage ceremony clearly illegal and of no effect as a lawful marriage between them. Kienstra seeks to avoid this result by the fact, as he claims, that he then, in good faith, believed that Mrs. Williams' husband was then dead; claiming he procured the divorce decree for Mrs. Williams as a matter of precaution. The answer to this is, as the board found, that Kienstra then had reason to believe that Mr. Williams was alive, rather than that he was then dead. The fact is that he was then alive, and is yet alive, for aught that appears in this record. We think the evidence fully warrants the board's finding against Kienstra's claim in this behalf.

Had Kienstra promptly, following their British Columbia marriage ceremony, sought to make amends for his wrong so committed, and not continued to induce Mrs. Williams to live with him as his lawful wife, and had he, after the six months' prohibitory period, as she desired him to do, made further amends by lawfully marrying her, there would be some substantial ground for the court to now visit upon him nominal or some less severe discipline than disbarment. But when we consider all his delinquencies in this respect, we feel constrained to hold that the judgment of this court must be in accordance with the recommendation of the board of examiners, that he be disbarred. We reach this conclusion uninfluenced by any loss of Mrs. Williams' property through Kienstra's alleged mismanagement thereof. We eliminate

this alleged delinquency from our consideration because of the somewhat unsatisfactory nature of the testimony touching it.

It is ordered and adjudged that Walter G. Kienstra be and is disbarred from the practice of law in this state.

MITCHELL, C. J., FULLERTON, HOLCOMB, FRENCH, and MILLARD, JJ., concur.

TOLMAN, J. (dissenting)—Accepting the facts as found by the majority, I am unable to concur in its conclusions. There is here no question of infidelity to clients or general unfitness to practice law. If Mr. Kienstra had been promptly proceeded against for his acts, on the complaint of the injured party, or at the instance of the court whose decree he disregarded and violated, his punishment would have been mild, indeed, as compared with that which is now inflicted.

To take away from a man of Mr. Kienstra's age the right, for all time, to practice the profession which he has followed all his life, and which is his only means of livelihood, seems to me to be far more serious than a prison sentence.

His offense is inexcusable and of a nature to demand severe censure and adequate punishment, even though the person chiefly injured has not complained; but even so, in my judgment, considering Mr. Kienstra's age and his financial condition, his public condemnation by this court and a suspension from practice for one year, would be as far as we can go without destroying him utterly.

I therefore dissent from the judgment of disbarment.

MAIN, and BEALS, JJ., concur with TOLMAN, J.