LOU F. FISCH, *Appellant,* v. NANNIE B. MARLER, *formerly Nannie B. Fisch, Respondent.*

NANNIE B. FISCH, *Appellant,* v. LOU F. FISCH *et al., Respondents.*

NANNIE B. FISCH, *Respondent,* v. LOU F. FISCH, *Appellant.*[1]

[1]Reported in 97 P. (2d) 147.

700

*Wright & Wright,* for Lou F. Fisch and Anna Fisch.

*Charles H. Heighton* and *George F. Hannan,* for Nannie B. Marler, formerly Nannie B. Fisch.

*Vanderveer & Bassett, Arthur T. Wendells, John Kelleher, Attwood A. Kirby,* and *Ambrose C. Grady, amici curiae.*

STEINERT, J.—This is a consolidated appeal involving three actions. The first was brought by Lou F. Fisch against Nannie B. Marler, formerly Nannie B. Fisch, to set aside a decree of divorce which she had obtained against him in a prior action, or, in the alternative, to procure injunctive or other equitable relief against the enforcement of the decree. Nannie B. Marler instituted the second action, or series of actions, by procuring successive writs of garnishment, supplemental to the decree, directed to the employer of Lou F. Fisch; in those proceedings, an order of intervention was entered upon the complaint of Anna Fisch, the present wife of Lou F. Fisch. The third action was a contempt proceeding instituted by Nannie B. Marler against Lou F. Fisch, under the title of the original divorce action, and was brought contemporaneously with the second garnishment proceeding. These actions were in part consolidated for trial below and all of them

were duly heard and disposed of by the same trial judge.

The complaint of Lou F. Fisch in the first action was dismissed, and from the judgment therein, he has appealed. The writs of garnishment in the second series of actions were also dismissed, with an allowance of twenty-five dollars attorney's fee to the garnishee employer, and the garnisher, Nannie B. Marler, was forever enjoined from attempting to take any of the community property of Lou F. Fisch and his present wife, Anna Fisch, and particularly from procuring any further writs of garnishment directed to the employer of Lou F. Fisch. From a judgment and decree embodying those rulings, Nannie B. Marler has appealed. In the contempt proceeding, findings of fact were made and an order was entered adjudging Lou F. Fisch in contempt and prescribing the terms of purgation. From that order, Lou F. Fisch has appealed.

In order to have an accurate understanding of the questions here involved, it will be necessary to employ some detail of dates and circumstances making up the skein of the present controversy. For convenience, we shall refer to Lou F. Fisch as appellant, to Nannie B. Marler as respondent, and to Anna Fisch as intervener.

Appellant became acquainted with respondent at Kellogg, Idaho, on March 17, 1915, both parties being at the time residents of that state. Appellant was then a single man; respondent was the wife of one Bernie Blair, by whom she had one child, a daughter three years of age. Blair disappeared from Kellogg in May, 1915, and has not been heard from since. Respondent was divorced from Blair October 23, 1915, and was awarded the custody of the child. According to the stipulation of the parties herein, the law of Idaho at that time rendered a subsequent marriage illegal and void unless the former marriage of either

party had been annulled or dissolved more than six months. Laws of Idaho, 1903, p. 10, § 1.

There is a dispute in the evidence as to when appellant first learned the date of respondent's divorce from Blair. Appellant testified that when he met respondent in March, 1915, she told him that she was then divorced, and that he did not definitely learn otherwise until the commencement of his present action. Respondent, on the contrary, testified that appellant was well aware of her marital status at the time, and that, in fact, he had aided her financially in procuring her divorce. Upon that issue, the trial court found for respondent. A review of the evidence upon the question convinces us that appellant was, at the time, well aware of respondent's marital situation. We therefore agree with the finding made by the trial court and proceed with our consideration of the case on that basis.

On March 4, 1916, which was within the six months' prohibitive period, appellant and respondent went to the state of Montana for the express and sole purpose of marrying each other. After the ceremony had been performed, they returned to Idaho, where they resided for the next three years. It is without question that both parties believed that they were legally married.

Subsequently, they moved to Washington, where they lived together continuously as husband and wife until October, 1931, during all of which time appellant supported respondent and her daughter. No child was born of their union.

On October 15, 1931, respondent instituted in Pierce county, Washington, an action for divorce from appellant on the ground of cruelty. Appellant defaulted in the action. On November 19, 1931, after a hearing, the court made findings conforming to the allegations

of the complaint, to the effect that the parties had intermarried in the state of Montana, that appellant was guilty of cruelty toward respondent, that the parties had no community property except their household furniture, and that appellant was earning a salary of $250 per month and commissions. The court on the same day entered an interlocutory decree of divorce, in which respondent was awarded the household furniture, permanent alimony in the sum of seventy-five dollars per month, and an attorney's fee of one hundred dollars. The interlocutory decree contained no provision reserving to the court the power to modify it. Final decree of divorce was entered, at the instance of respondent, on March 17, 1936.

Appellant paid the accruing alimony according to the terms of the decree continuously until August, 1938, at which time the total payments made by him amounted to $6,150. He then discontinued payments, for reasons which will presently appear.

On March 20, 1936, following the final decree of divorce above mentioned, appellant married his second wife, the intervener herein, who at that time was a divorced woman and the mother of two children, the older of which was about eleven years of age. A child, now about two years old, was subsequently born of her marriage to appellant. Intervener and her three children are being supported by appellant, who also contributes from thirty to forty dollars per month toward the support of his aged parents.

On March 19, 1938, respondent married Dallas Marler, a private in the United States Army, earning a compensation of $37.50 per month. No child has been born of that union. Appellant did not learn of respondent's marriage to her third husband until September, 1938, at which time, on advice of counsel, he discontinued the monthly payments to her. Respondent tes-

tified that she could not have married her present husband had it not been for the fact that she was receiving seventy-five dollars per month alimony from appellant; that she had no other source of income; that for a long time she had been under a doctor's care; and that she and her present husband were buying a home, upon which they were paying twenty dollars a month.

The evidence discloses that appellant now earns three hundred dollars per month, plus a yearly bonus, which in 1938 amounted to $1,600. There is a mortgage on his present home, occupied by himself and intervener, amounting to about $3,900. Without going into further details upon the subject of appellant's financial obligations, it is sufficient to say that his evidence was to the effect that, after paying the necessary expenses of his present household and the monthly contributions to his parents, his income was insufficient to pay the alimony installments.

With this factual situation before us, we approach the several questions presented for decision.

Appellant's contentions, in so far as his complaint for relief from the decree is concerned, relate to the past and present marital status of the principal parties. His first contention is that the marriage in Montana was wholly void; and that, therefore, there could be no legal divorce, nor any valid award of alimony to respondent. Appellant rests his argument upon the fact that his marriage to respondent was within the six months' prohibitive provision of the law of Idaho, where respondent was divorced and where the parties hereto were then domiciled.

While the general rule is that the validity of a marriage is determined by the law of the place where the marriage is solemnized, there are certain well recognized exceptions. One of these arises when a statute either expressly or by judicial interpretation

forbids remarriage by domiciliaries *either within or without the state,* for a certain period of time after their divorce. A remarriage during such time, wherever solemnized, is invalid. Restatement of Conflict of Laws, 195, § 131.

The applicable statute of Idaho, Laws of 1903, p. 10, referred to above, which is before the court by stipulation of the parties, declares that a subsequent marriage, contracted by any person during the life of a former husband or wife of such person, with a third party shall be illegal and void from the beginning, unless the former marriage of either party has been annulled or dissolved more than six months before. The statute, however, contains no provision making it applicable to marriages contracted outside the state; nor is there any case from Idaho before this court which determines the effect of the statute in that respect. The decisions of this state are, therefore, in so far as they are in point, controlling.

Prior to 1921, the law in this state (Laws of 1893, chapter 94, p. 225) prescribed a prohibitive six months' period, during which persons divorced in this state could not, either within or without the state, lawfully marry a third party. We have a number of cases holding that marriages in contravention of that statute are void, regardless of the law of the place of celebration, and it is upon these cases that appellant relies. *State v. Fenn,* 47 Wash. 561, 92 Pac. 417, 17 L. R. A. (N. S.) 800; *Pierce v. Pierce,* 58 Wash. 622, 109 Pac. 45; *Peerless Pacific Co. v. Burckhard,* 90 Wash. 221, 155 Pac. 1037, Ann. Cas. 1918B, 247, L. R. A. 1917C, 353; *Knoll v. Knoll,* 104 Wash. 110, 176 Pac. 22, 11 A. L. R. 1391; *In re Kienstra,* 151 Wash. 424, 276 Pac. 294.

However, prior to 1893 the statute read differently. It required the court, in its judgment of divorce, to order a full and complete dissolution of marriage, and

further prescribed that neither party should be capable of contracting marriage with a third party until the period of appeal (six months) had expired. Code of 1881, § 2008.

Construing that statute, this court held, in *Willey v. Willey*, 22 Wash. 115, 60 Pac. 145, 79 Am. St. 923, that the prohibitions of the code were not effective beyond the jurisdiction of the state, and that a common law marriage, contracted by one of the divorced parties during the prohibitive period, in another state which recognized common law marriages, was valid in this state, although the parties returned to this state before the expiration of the six months' period.

In so far as the extraterritorial effect of the Idaho statute is concerned, it, like § 2008 of the Code of 1881, does not purport to affect marriages in other jurisdictions, and therefore the rule of the *Willey* case, which is in conformity with the general rule, 'Restatement of Conflict of Laws, 194, § 130, Goodrich on Conflict of Laws (2d ed.), 305, § 114, 2 Beale on Conflict of Laws, 685 and 686, compels the conclusion that the Idaho law did not invalidate the Montana marriage.

However, if the matter be viewed solely from the standpoint of appellant's contention, he still cannot prevail.

Appellant alleged in his complaint that, at the time of his marriage to respondent, she had a living husband; but there was no proof of that fact. The evidence merely disclosed that respondent's former husband, Bernie Blair, disappeared in May, 1915, and had not been heard from since.

The presumption being in favor of the validity of a marriage, the person who attacks it, on the ground that one of the parties thereto had been previously married to another person, assumes the burden of proving that the former marriage had not been dissolved either by

the death of the former spouse or by a decree of divorce. *Goldwater v. Burnside,* 22 Wash. 215, 60 Pac. 409; *Potter v. Potter,* 45 Wash. 401, 88 Pac. 625; *Donofrio v. Donofrio,* 167 Wash. 80, 8 P. (2d) 966; 18 R. C. L. 427, § 56; 38 C. J. 1328, § 104; Tiffany on Domestic Relations (3d ed.), 62; 2 Schouler on Marriages & Divorce (6th ed.), 1486. Appellant therefore failed to prove a vital issue in the case.

Appellant's second contention, based upon his complaint, is that, under the circumstances shown to exist, it is inequitable and unconscionable to permit respondent to continue to enforce her decree for alimony, and that he is therefore entitled to relief in equity.

In making this contention, appellant does not ask that the decree itself be modified or altered. He could not well seek such relief, for this court has categorically held that, where the decree grants an absolute divorce and allows permanent alimony, though payable in installments, and there are no minor children to be cared for, and the decree contains no reservation of jurisdiction, and there is no statute conferring the power to modify after the time for appeal has expired, and the time limited by statute within which judgments may be modified has elapsed, and the judgment is not attacked upon the ground of fraud or mistake, the court has no power to modify or alter the decree to meet changed conditions. *Ruge v. Ruge,* 97 Wash. 51, 165 Pac. 1063, L. R. A. 1917F, 721; *Cooper v. Cooper,* 146 Wash. 612, 264 Pac. 1.

The case of *Blethen v. Blethen,* 177 Wash. 431, 32 P. (2d) 543, affirmed the *Ruge* case and held, further, that a decree for alimony was property vesting in the person to whom the alimony was awarded; and that, since the legislature could not take away such vested rights in property, a statute was unconstitutional in so far as it attempted to confer power on a court to annul or

vary final judgments for alimony entered before the passage of the statute.

The cases just cited would be controlling upon any request for modification of the decree. Hence, appellant now resorts to equity, contending that the circumstances disclosed by the evidence are such as will warrant an equity court in granting the extraordinary remedy of enjoining further enforcement of the judgment.

It is undoubtedly the rule that a party may obtain relief in equity against a judgment after the expiration of a year from the date of its entry, provided that proper grounds for equitable interposition are shown. *Anderson v. Burgoyne*, 60 Wash. 511, 111 Pac. 777; *State ex rel. Northern Pac. R. Co. v. Superior Court*, 101 Wash. 144, 172 Pac. 336. However, it is universally recognized that, where a party has failed to make a proper defense at law through his own negligence, equity will not aid him. Even though a judgment may be inequitable, it will not be set aside nor will its enforcement be enjoined, when it was the result of the complaining party's own fault or inexcusable neglect. *Spokane Co-operative Mining Co. v. Pearson*, 28 Wash. 118, 68 Pac. 165; 3 Freeman on Judgments (5th ed.), 2500, § 1204; 15 R. C. L. 740, § 195; 34 C. J. 444, § 698.

Appellant's request is controlled by these principles. He was personally served with process, but failed to appear in the action in which the decree of which he now complains was entered. Had he appeared, he might have had the court specifically provide in the decree either that alimony should cease upon remarriage of respondent or that the court retained jurisdiction to modify the decree as changed conditions should warrant; and, if the court should have refused to do either, appellant could have appealed from the decree.

On the contrary, appellant did not challenge the decree, but made payments thereunder until the commencement of this action, years later. We therefore hold that appellant is not entitled to relief upon his contention that the enforcement of the decree has now become inequitable and unconscionable.

As another ground for relief from the effect of the decree, and particularly for the purpose of avoiding the judgment of contempt for failure to pay alimony, appellant contends that it is against public policy and good morals to compel a divorced husband to pay alimony to his former wife who has remarried and lives with her present husband.

That question is one of first impression in this jurisdiction. However, it has been the subject of frequent consideration in other states. The cases are collated and discussed in 30 A. L. R. 81, 64 A. L. R. 1273, and 112 A. L. R. 253. Among still later cases are *Durfee v. Durfee,* 199 Atl. (R. I.) 747; *Eaton v. Eaton,* 3 Atl. (2d) (N. H.) 832; *McHan v. McHan,* 59 Idaho 496, 84 P. (2d) 984.

The authorities are by no means all in harmony. Some of them take the view that, for reasons of public policy, a divorced woman should not, upon remarriage, be permitted to look to her former husband for support. Others hold that, since alimony is allowed on the theory that it is for the support and maintenance of a divorced wife, her remarriage to one capable of furnishing her suitable support may, under the particular circumstances, constitute a strong ground for terminating the alimony or reducing the amount decreed. Still other cases hold that remarriage has, and should have, no effect whatever upon the former allowance for support.

It would be profitless to array and analyze the many cases on the subject. We have examined them care-

fully and compared the various reasons for their respective results. We believe that the weight of authority, the sounder reasoning, and the promotion of substantial justice support the conclusion of those cases which hold that remarriage of a divorced wife does not, of itself, terminate the obligation of the former husband to pay alimony as prescribed in the decree, but that ordinarily it would constitute a strong reason for the exercise of a judicial discretion, provided that it was supported by some recognized ground for equitable interposition.

Whether, under some particular set of facts and circumstances, it would be offensive to public policy or good morals to permit a divorced wife to receive alimony from her former husband, or whether a particular situation might be so glaring and offensive in nature as to call for a restraint upon the enforcement of a vested right, it is not necessary to decide here. The facts in this case as we have narrated them do not, in our opinion, present such a situation. We do not think that the enforcement of respondent's vested rights, under the facts presented, can rightly be said to be offensive to public policy or shocking to a proper sense of good morals. Whatever force the particular circumstances might otherwise have had in calling for the exercise of judicial discretion, no ground for equitable interposition has been shown, because, as already stated, the result has come about through appellant's own negligence in failing to take the proper steps to have the decree provide against the contingency which has now crystallized into an actual condition.

We take up, next, the matter of the contempt proceeding. The trial court found that appellant had at all times been financially able to pay the amount of alimony decreed. A failure by a party to comply

with the terms of a decree commanding the payment of alimony subjects such party to the penalty for contempt unless he shows his inability to perform the terms of the command. *State ex rel. Smith v. Smith,* 17 Wash. 430, 50 Pac. 52; *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974; *Croft v. Croft,* 77 Wash. 620, 138 Pac. 6; *Surry v. Surry,* 78 Wash. 370, 139 Pac. 44; *Phillips v. Phillips,* 165 Wash. 616, 6 P. (2d) 61. We think that the order adjudging appellant in contempt was not only proper but was the only order that the court could have entered upon the facts found by it.

The next controversy arises upon respondent's appeal from the order (a) dismissing the two writs of garnishment, and (b) enjoining respondent from attempting to reach the earnings of appellant by future writs of the same nature.

Appellant concedes that a judgment for alimony payable in installments is, in so far as accrued installments are concerned, such a judgment as affords a legal basis for the issuance of a writ of garnishment. *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017. *Knettle v. Knettle,* 190 Wash. 395, 68 P. (2d) 218. His contention, however, is that his present earnings are the community property of himself and the intervener, and are therefore not subject to garnishment for the satisfaction of a separate judgment against him.

It must be conceded that this presents a difficult problem; for, seemingly, we must adopt, as controlling of this case, one of two conflicting principles. One principle, well settled in this jurisdiction, is that community property may not be taken in satisfaction of a separate judgment or indebtedness of either spouse. The other principle, if we are to give it recognition, is that a divorced wife has such an interest in the earn-

ings of her former husband as will support a garnishment for unpaid installments of alimony. Apparently, there has been some doubt among the members of the bar as to which of these principles governs the other in case of conflict.

In *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974, a divorced husband, who had subsequently remarried, was adjudged in contempt for failure to pay alimony for the support of his divorced wife and minor child. In affirming the judgment we said:

"While the appellant, under the law of this state, may after the decree of divorce legally remarry, the fact of a subsequent remarriage cannot relieve him of the obligation fixed by the decree. If his monthly income after divorce was sufficient to support himself alone and to pay his divorced wife the alimony allowed, he could not by his subsequent marriage set aside the decree, or be heard to say that the additional burdens which he himself thereby assumed made him unable to comply with the decree. The divorced wife and minor child *have a fixed and prior claim upon the earnings of appellant,* which appellant for his own comfort may not take away." (Italics ours.)

In *Herrett v. Herrett,* 80 Wash. 474, 141 Pac. 1158, the lower court modified an original divorce decree in several particulars. On motion of the divorced wife, the decree was modified by increasing the original amount of allowance of alimony. In reversing that portion of the order of modification, this court used the following language:

"It may be said that the case falls within the rule of *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974, and that a husband is bound to pay alimony to a former wife, notwithstanding the fact that he has remarried. We do not doubt this proposition, but this court has never intended to go so far as to hold that a divorced man or woman has no right to remarry, or that, if he does, all his earnings

must go to the first wife. The *Brown* case does not deny the right of the court to measure the several obligations of the husband in a direct proceeding.

"The law recognizes marriage as a civil contract founded on public policy, and encourages it in the interest of morality. If, then, a divorced husband remarries, he owes a duty to his present wife as well as to the former relation that the law must recognize if it is consistent. While the first wife may have first consideration and her necessities will not be unreasonably curtailed, or her wants ignored, neither will the necessities or wants of the second wife be disregarded. The court should and will make such adjustment as the relative necessities of the parties demand and the ability of the husband will warrant. From the record before us, the former order is more consistent with right and reason than is the one appealed from."

In *Lockhart v. Lockhart,* 145 Wash. 210, 259 Pac. 385, this court, in granting a divorced husband relief from a decree awarding alimony to the wife, expressed itself thus:

"It is not the policy of the law, nor is it either just or equitable, that a divorced wife be given a perpetual lien upon her divorced husband's future earnings. She has chosen to go her own way, to abandon all the obligations she assumed by her marital vows, and it is only under the most unusual circumstances that she can rightfully call upon him to continuously contribute to her support."

In both the *Herrett* case and the *Lockhart* case, the power to modify the decree had been reserved.

In *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294, a divorced wife, seeking to recover alimony due her under a divorce decree, sued out a writ of garnishment directed to an insurance company. The company answered that it had in its possession certain moneys due the former husband under the provisions of the husband's insurance policies. The husband filed a claim of exemption based upon a statute which made

the proceeds or avails of accident and health insurance exempt from all liability for any debt of the assured. This court denied the claim for exemption, and stated that alimony and support money payments due are not a debt or liability within the meaning of any provisions of our constitution or any statute relating to exemption. In support of its conclusions, the court reasoned, by analogy, as follows:

"If the funds in controversy are exempt, then the wages of the divorced husband, upon remarriage, would be exempt under our community property law. A divorced husband cannot, by remarriage, escape the obligation to pay alimony imposed upon him for the support of his divorced wife and minor child, even if the additional burdens imposed by his remarriage tend to exhaust his earnings, since his divorced wife and child have a prior claim upon his earnings until the modification of the decree in a direct proceeding therefor. *State ex rel. Brown v. Brown* [*supra*] . . ."

It may be that the language which we have successively quoted from these four cases has engendered the uncertainty which now prevails concerning the right of a divorced wife to have the earnings of her former husband applied upon unpaid installments of alimony due her under a decree of divorce. The combination of factors in the case at bar is such, we think, as to require a definite statement from this court upon the subject.

Considering the matter from its various angles and in the light of the preceding cases, we declare the following rules:

(1) The subsequent marriage of a divorced husband does not relieve him of his obligation to pay to his former wife permanent alimony as required by the decree of divorce, and the former wife has, and continues to have, a fixed and prior claim upon his earnings for the payment of such alimony. This rule finds

particular support on grounds of justice and reason where there is a minor child or children of the former marriage.

(2) Garnishment is a proper proceeding to enforce such claims.

(3) The subsequent marriage of the divorced wife does not, of itself, terminate her fixed and prior claim upon the earnings of her former husband, whether he remarries or not, nor does her subsequent marriage *ipso facto* terminate her right to enforce her claim by garnishment. This rule is likewise particularly applicable in cases where there is a minor child or children of the former marriage.

(4) Although the claim of the divorced wife upon the earnings of her former husband is a fixed and prior one, it is not in all cases to be enforced to the point of exhaustion of such earnings, for the present wife also has a claim thereon which is entitled to consideration. Upon a showing by the present wife of necessitous circumstances, particularly where there is a minor child or children of the husband's subsequent marriage, the court may make such adjustment and allocation of the husband's earnings as may appear to it to be just and equitable in the premises.

(5) For the purpose of securing or protecting such rights as she may have in the earnings of her husband, the present wife may intervene in any proceeding which affects such earnings.

For the reasons hereinabove given, we hold that the writs of garnishment should not have been dismissed, and that the order enjoining respondent from seeking further garnishments should not have been made; but we also hold that the court had power to exercise its discretion in allocating the garnished funds according to the necessities of the parties concerned.

Respondent asks that indemnity damages be as-

sessed, by this court, under Rem. Rev. Stat., § 1058 [P. C. § 7451], relating to loss or injury occasioned by contemptuous acts, or that the matter be remanded to the trial court for assessment; or else that the judgment on the appeal be without prejudice to further proceedings for damages. By such request, respondent seeks to recover an attorney's fee for prosecuting the contempt proceedings.

It is conceded by respondent that the question of such damages was never submitted to the trial court, and that she took no appeal from any of the provisions of the order adjudging appellant in contempt.

We have repeatedly held that a question not raised in any manner before the trial court will not be considered on appeal. *In re Corneliusen's Estate,* 182 Wash. 488, 47 P. (2d) 843, and cases therein cited. An added reason for not considering the matter is that respondent did not appeal from the order. *Simmons v. Northern Pac. R. Co.,* 88 Wash. 384, 393, 153 Pac. 321, 155 Pac. 1039, Ann. Cas. 1918C, 1184.

Since the question of attorney's fees could have been raised in the trial court, but was not, that issue is now *res judicata.* *Globe Const. Co. v. Yost,* 173 Wash. 528, 23 P. (2d) 895; *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184; *Baxter v. Central West Casualty Co.,* 186 Wash. 459, 58 P. (2d) 835; *Large v. Shively* (on rehearing), 194 Wash. 608, 79 P. (2d) 317, 82 P. (2d) 793.

The judgment dismissing appellant's complaint and the order adjudging appellant in contempt are both affirmed. The judgment dismissing the writs of garnishment is reversed, and that cause is remanded to the trial court with direction to proceed in accordance with the views herein expressed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.