[No. 38912.    Department One.    March 23, 1967.]

*In the Matter of the Estate of* HERMAN FELIX GRAUEL, *Deceased.*

MARGUERITE GRAUEL GOLDMAN, *Appellant,* v. CHARLOTTE E. HART, *Respondent.**

*Clarence H. Fidler,* for appellant.

*Reported in 425 P.2d 644.

*Conniff, Harper & Taylor,* for respondent.

ROSELLINI, J.—This is an appeal from a decree of the trial court denying the petition of the appellant for a determination that she was the legal wife of the deceased, Herman Felix Grauel, and entitled to the widow's share of his estate.

At the hearing on this petition, evidence was introduced showing that Herman Felix Grauel married the appellant in Clallam County in 1941 and that they lived together approximately 6 months, at the end of which time the appellant left him because of his failure to support her. Thereafter, he continued to reside in Clallam County while the appellant moved first to Seattle, then to the Chicago area where she remained until his death in 1962. Mr. Grauel married Charlotte Abbott in Clallam County on February 7, 1959. The appellant did not remarry until 3 years after Mr. Grauel's death.

It was the contention of the appellant that she and Mr. Grauel had never been divorced, that the second marriage was therefore bigamous, and that for this reason she was entitled to claim the widow's share of her deceased husband's estate.

■ This court is in accord with the majority of courts in holding that a marriage ceremony performed by a minister or officer authorized by law to perform such ceremony, purporting to unite in marriage a man and woman, with their consent, gives rise to a presumption that they are each qualified to enter into such marriage relation, as well as that such marriage is in all other respects legal. But while this is a strong presumption and grows stronger with the passing of years, it is not conclusive or incapable of being overcome by other evidence aided by other counter presumptions. *State ex rel. Bentley v. Frenger,* 158 Wash. 683, 291 Pac. 1089 (1930). See annotation, "Presumption as to validity of second marriage," 14 A.L.R.2d 7 (1950). See also *Davis v. Davis,* 3 Wn.2d 448, 101 P.2d 313 (1940) and *Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939) and cases cited therein.

In seeking to overcome the force and effect of this presumption, the appellant testified without contradiction that she had not obtained a divorce from Mr. Grauel and introduced answers to interrogatories from clerks of all the counties of the states of Washington and California where witnesses testified Mr. Grauel had spent some time in the intervening years, and from the clerk of the First District of Juneau, Alaska. Each of these stated that there was no divorce in the records under the control of the clerk.

The trial court, nevertheless, found that the evidence was not sufficient to overcome the presumption and the evidence tending to show that Mr. Grauel had obtained a divorce. This evidence was his signed statement on a bankruptcy petition that he was a single man, his signed statement on his application for his second marriage license that he was divorced, and a verbal statement made to an acquaintance after his second marriage that he and the appellant had been divorced.

The trial court was of the opinion that the penalty for perjury made it unlikely that he would have made false statements in a bankruptcy petition or a marriage license application, and that he had no incentive for making a false statement to an acquaintance. The trial court was, however, confronted with evidence that Mr. Grauel had not obtained a divorce in any of the places where he could have been expected to procure one. It crossed this hurdle by speculating that Mr. Grauel, during his stay in Los Angeles, might have crossed over the border and obtained a "quickie" Mexican divorce.

Thus, the trial court held in effect that the appellant's burden to prove the negative that there was no divorce required her to search the records of every jurisdiction where a proceeding might possibly have been had, even though a divorce obtained in such jurisdiction would have been invalid according to the laws of this state.

In so holding, the trial court was in error. Our examination of the authorities has not revealed any which declares that the party attacking the validity of a second

marriage must show, not only that there was no lawful divorce, but no unlawful one as well. It would be anomalous indeed if the courts, in their zeal to protect the interests of a second wife, would presume and give effect to a divorce, which ordinarily in other proceedings, they would refuse to recognize as valid.

■ The rule in this jurisdiction, as in the majority of other jurisdictions (see annotation, "Recognition as to marital status of foreign divorce decrees attacked on ground of lack of domicile, since Williams decision," 28 A.L.R.2d 1303 (1953)), is that a divorce decree obtained solely upon constructive service is not entitled to full faith and credit in sister states, where neither of the spouses were domiciled in the state granting the divorce at the time the suit was instituted. *Mapes v. Mapes,* 24 Wn.2d 743, 167 P.2d 405 (1946). *Dormitzer v. German Sav. & Loan Soc'y,* 23 Wash. 132, 62 Pac. 862 (1900). In *Mapes v. Mapes, supra,* this court said at 748:

> Proof of residence is essential, and a divorce obtained with the aid of an assumed residence is not in good faith and does not give the court jurisdiction of the case. Domicile or residence is mainly a question of intent, which may be shown by the testimony of the parties and by surrounding circumstances. [Citing cases.]

The discussion of the term "domicile" which is equated with "residence" contained in the *Dormitzer* case, is quoted in the *Mapes* case. In both of these cases, we approved the following definition taken from 10 Am. & Eng. Encyc. Law 7, 8 (2d ed., 1899), and cases cited therein:

> "In a strict and legal sense, that is properly the domicil of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning."

Applying that definition to the evidence in this case, it is apparent that the only domicile of Herman Felix Grauel, from the time of his first marriage to the time of his second, was Clallam County, Washington. Both of his marriages took place there and it appears from the record that he grew up there. He owned property there; he lived and

worked there most of his time. There was no evidence that he spent as long a time as a year in any other place. He always returned to Clallam County. There is no evidence that he ever expressed an intent to make his home elsewhere.

His sister and his life-long friend, both of whom also lived in Clallam County, testified that they did not know of a divorce; and his second wife also conceded that she had no knowledge of a divorce although she understood that there had been one.

■ We think it must be held as a matter of law that the appellant's evidence overcame the presumption that the first marriage was dissolved by divorce and also overcame any presumption that the deceased would not have committed perjury in answering questions on a petition for bankruptcy and an application for a marriage license. It is not necessary to conclude that he deliberately lied on those occasions. It may well have been that after so many years had passed, he assumed his first wife had divorced him; and it would not be outside the pale of human experience if that assumption grew at last to be a firmly held conviction. However, under our laws, a divorce cannot be obtained by mere wishing or believing, nor can it be effected by a thrice repeated statement, "I have divorced my spouse." An adjudication is required which places the occurrence on record. While a remarriage raises a strong presumption that the parties were qualified to marry, the presumption is not irrebuttable. By showing that no divorce was obtained in any place where the deceased might reasonably have been expected to seek a divorce, the appellant sustained the burden of rebutting the presumption.

It should be remarked that while the second marriage took place in 1959, the appellant did not learn of it until after Mr. Grauel's death 3 years later. Consequently, this is not a case where a second marriage has endured for a long period of time during which the first spouse, although aware of the remarriage, has voiced no objection. There is,

therefore, no question of estoppel involved. There is also no question of legitimacy of children involved.

The judgment is reversed and the cause remanded with directions to grant the prayer of the petition.

FINLEY, C. J., HILL and HALE, JJ., and DENNEY, J. Pro Tem., concur.